The CONTINENTAL BANK AND TRUST COMPANY, a Utah Corporation, Plaintiff and Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota Corporation, Defendant and Respondent.

No. 14109.

Supreme Court of Utah.

May 21, 1976.

Albert J. Colton, Glen E. Clark and Peter W. Billings, Jr., Fabian & Clendenin, Salt Lake City, for plaintiff and appellant.

Joseph J. Palmer and Wayne G. Petty, Moyle & Draper, Salt Lake City, for defendant and respondent.

ELLETT, Justice:

Plaintiff Bank brought an action seeking indemnity under a banker's blanket bond. Defendant underwriter moved for a summary judgment, which was granted. The plaintiff appeals seeking a trial on the merits.

Plaintiff's allegations were these: That in April of 1971, Clark Tank Lines Company, Inc. and Service Tank Lines, Inc. sued plaintiff for damages in excess of $600,000, alleging the loss was occasioned by the actions of one J. Moroni Stoof (an agent of Clark), being aided and abetted by Continental under circumstances constituting bad faith; that Continental kept St. Paul informed at all pertinent times, requested St. Paul to assume liability and defense of the claims, which request was refused; that Continental was required to obtain counsel for defense of the action; that the action was subsequently settled for $15,600, and in addition Continental expended $13,330.91 for attorney's fees and costs; that St. Paul was informed of the settlement; but responded that it was not affected, since the critical issue was whether Continental was covered by the bond.

Continental further pleaded that its loss occurred through the conduct of J. Moroni Stoof, who materially altered certain checks with intent to defraud and convert the checks to his own use; that the settlement with Clark and Service was a loss to Continental through forgery and alteration.

In order for the appellant to recover under its policy with the respondent it must prove that the loss was sustained:

1. By reason of a forgery or alteration of a check; or

2. By reason of dishonest, fraudulent or criminal acts of an employee of the bank; or

3. Because Mr. Stoof (employee of Clark Tank Lines) materially altered a check without authorization and through fraudulent misrepresentations; or

4. Because the Bank aided and abetted Mr. Stoof in his embezzlement from the Bank.

The Bank's answers to interrogatories were as follows, to wit:

1. State the names and addresses of all persons who have knowledge that the checks alleged in the First Cause of Action were signed in blank, or were obtained, completed and materially altered without authorization and through fraudulent misrepresentation by J. Moroni Stoof.

ANSWER: Plaintiff has no independent knowledge of persons who have knowledge that the checks alleged in the First Cause of Action were signed in blank or were obtained, completed, or materially altered without authorization through fraudulent misrepresentation by J. Moroni Stoof. . . .

2. State Plaintiff's understanding of how Stoof obtained, completed and materially altered said checks without authorization, and of the fraudulent misrepresentations he made.

ANSWER: Plaintiff has no independent understanding of the information requested by this interrogatory.

3. State the names of the persons who acted on Plaintiff's behalf in bad faith and with actual knowledge of Stoof's lack of authority as alleged in Paragraph 26.

ANSWER: * * * Plaintiff knows of no persons who acted upon plaintiff's behalf in bad faith and with actual knowledge of Stoof's lack of authority.

4. State the names of plaintiff's employees who aided and abetted Stoof in the embezzlements as alleged in Paragraph 27.

ANSWER: . . . Plaintiff knows of no employees of plaintiff who aided and abetted in the embezzlement.

5. State the names of Plaintiff's employees who converted funds to Plaintiff's use as alleged in Paragraph 25 and describe how Plaintiff converted funds to its own use as alleged in that paragraph.

ANSWER: . . . Plaintiff knows of no employees who converted funds to its use nor does it know of funds which were converted to its own use.

6. State the names and addresses of Plaintiff's employees who were dishonest, fraudulent or acted or committed criminal acts as alleged in Paragraph 29 and describe those acts.

ANSWER: . . . Plaintiff knows of no employees of plaintiff who were dishonest, fraudulent or acted or committed criminal acts in connection with the subject matter of this action.

The answers given by the appellant to the foregoing questions clearly show that no recovery can be had under its policy. The trial court was correct in granting a summary judgment in favor of the respondent.

Some ten days after the summary judgment was given, the appellant undertook to file supplemental answers to the interrogatories which it had previously made. In the proposed new answers it affirmed that it had no knowledge contrary to that which it had stated before, but asserted that an attorney for Clark Tank Lines in the prior action had knowledge of certain other cases in the courts of this State, and that the information contained therein was available to the respondent.

Even if the belated answers are to be considered, it would not affect the judgment as rendered.

The judgment is affirmed and costs are awarded to the respondent.

HENRIOD, C. J., and CROCKETT, J., concur.

MAUGHAN, Justice (dissenting):

The situation countenanced by the main opinion allows an insurer to prevent recovery by its insured, by withholding information which it is alleged to have—information which would allow recovery. The allegation it has such information was received by the court, is a part of the record, and its efficacy should be determined by trial.

However, even without this alleged information the insured presents a solid complaint warranting trial.

Plaintiff Bank brought an action seeking indemnity under a banker's blanket bond. Defendant underwriter moved for a summary judgment, which was granted; plaintiff appeals seeking a trial on the merits. We should reverse and remand for a trial on the merits, with costs to Continental.

Plaintiff's allegations were these: That in April of 1971, Clark Tank Lines Company, Inc. and Service Tank Lines, Inc. sued plaintiff for damages in excess of $600,000, alleging the loss was occasioned by the actions of one J. Moroni Stoof (an agent of Clark), being aided and abetted by Continental under circumstances constituting bad faith; that Continental kept St. Paul informed at all pertinent times, requested St. Paul to assume liability and defense of the claims, which request was refused; that Continental was required to obtain counsel for defense of the action; that the action was subsequently settled for $15,600, and in addition Continental expended $13,330.91 for attorney's fees and costs; that St. Paul was informed of the settlement; but responded that it was not affected, since the critical issue was whether Continental was covered by the bond.

Continental further pleaded that its loss occurred through the conduct of J. Moroni Stoof, who materially altered certain checks with intent to defraud and convert the checks to his own use; that the settlement with Clark and Service was a loss to Continental through forgery and alteration.

Further allegations were, the conduct asserted by Clark and Service, if established, would have constituted dishonest, fraudulent, or criminal facts of employees of Continental, and that such would be an indemnifiable loss.

Continental further claims attorney's fees and costs incurred and paid, in defending and settling the lawsuit against it; and that such indemnity is expressly provided for in the banker's blanket bond.

St. Paul contends for the fruits of the summary judgment solely upon the ground that it had no duty to defend. That it had no duty to defend we agree. By its contract, it had supplied itself with that position. It had an option to defend or not to defend. The provision on page 3 of the banker's blanket bond, entitled "Court Costs and Attorneys' Fees" reads as follows:

The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured would constitute a valid and collectible loss sustained by the Insured under the terms of this bond. Such indemnity shall be in addition to the amount otherwise recoverable under this bond. In consideration of such indemnity, the Insured shall promptly give notice to the Underwriter of the institution of any such suit or legal proceeding; at the request of the underwriter shall furnish it with copies of all pleadings and other papers therein; and at the Underwriter's election shall permit the Underwriter to conduct the defense of such suit or legal proceeding, in the Insured's name, through attorneys of the Underwriter's own selection. In the event of

such election by the Underwriter, the Insured shall give all reasonable information and assistance, other than pecuniary, which the Underwriter shall deem necessary to the proper defense of such suit or legal proceeding. This indemnity shall not apply to Insuring Clause (S).

But St. Paul appears to go further and claim that it had no duty to defend for the reason that the allegations in the complaint filed against Continental by Clark and Service did not describe occurrences which fell within the insuring clauses of the bond. This theory, if accepted without reservation, would place an insured at the mercy of whatever characterizations a third-party pleader may wish to use to frame his complaint. The concern here is not with what some third party may have said, but is with what actually happened; and whether such occurrences fall under the protection of the insuring clauses. It is a matter of evidence not semantics.

It can be said that the allegations in the Clark-Service complaint could well describe conditions requiring indemnification. The instant matter is not one of a kind with those cases which hold that an insurance company has no duty to defend an action against its insured, which seeks compensation for conduct or occurrences not covered within the language of the policy.

Rather, we have here an issue of coverage under a banker's blanket bond similar to that which was resolved under equivalent facts in the case of Jefferson Bank & Trust Co. v. Central Surety & Insurance Corp.[1] There plaintiff bank sought recovery for the amount it was required to pay Brede Decorating Inc., as a result of a judgment, plus costs and expenses. Plaintiff Bank had notified defendant insurance company of the Brede action; and defendant had denied liability, and declined to defend. The court ruled that the acts of one Egan or Siviur, employees of Brede, amounted to

false pretenses on the premises; which fell within coverage B of the bond. Defendant, insurer, asserted that in the Brede action the court had ruled as a matter of law what had occurred was a conversion, and the blanket bond did not cover loss by conversion. The response of the court was:

This contention overlooks the fact that the suit by Brede against Jefferson [bank] was for alleged conversion by the bank of Brede's funds as a result of the bank's handling of checks which belonged to Brede. When the opinion speaks of conversion or diversion of funds, it is characterizing what the bank did, not the nature of the acts of Egan or Siviur. The Brede opinion does not hold that the acts of Egan or Siviur were not false pretenses on the premises or, for that matter, that they were not forgeries.

In this action by Jefferson against Central we are concerned with the acts of Egan and Siviur. More specifically, we are concerned with whether they amount to false pretenses on the premises or forgeries which, in turn, induced Jefferson to convert or divert Brede's funds. We hold, as above indicated, that the acts of Egan and Siviur did constitute false pretenses on the premises. Under these. circumstances, we need not extend this opinion by considering whether the acts also would fall within the coverage against loss by forgery under coverage D. [At page 829 of 408 S.W.2d.]

The court ruled that the bank was entitled to judgment for the amount of its loss and attorney's fees.

Another determination significant here is found in *Merchants-Produce Bank v. United States Fidelity & Guaranty Co.*[2] in which the court stated that defendant's contention it was legally significant that the actions brought against plaintiff bank sounded in negligence was not tenable.

---

1. 408 S.W.2d 825 (Mo.1966).

2. U.S.D.S.W.D.Mo.1969, 305 F.Supp. 957, 962–963.

The court cited cases in which B coverage under the banker's blanket bond was adjudicated, without reference to the nature of the cause of action asserted by a third party against the bank. The basis of the bank's liability is not deemed significant in connection with the bank's action against the bonding company. The significant aspect is whether or not the bank's action was induced by conduct covered under the loss provisions of the bond.

Such is the situation of the litigants in the instant matter.

TUCKETT, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.