**JEFFERSON BANK AND TRUST COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**CENTRAL SURETY AND INSURANCE CORPORATION, a Corporation, Defendant-Respondent.**

No. 51209.

Supreme Court of Missouri,
Division No. 2.

Dec. 12, 1966.

Buckley & Campbell, R. Forder Buckley, Robert Lee Campbell, St. Louis, for plaintiff-appellant.

Fred J. L. Schuler, St. Louis, for defendant-respondent.

FINCH, Judge.

This case comes to the writer on reassignment.

Plaintiff bank, herein sometimes referred to as "Jefferson," brought suit on its Bankers Blanket Bond for $20,621.06. Both plaintiff and defendant surety, sometimes referred to as "Central," filed motions for summary judgment. The trial court entered judgment for Central on its motion for summary judgment and Jefferson has appealed.

Jefferson seeks recovery of the amount it was required to pay Brede Decorating, Inc., as a result of the judgment of this court in the case of Brede Decorating, Inc. v. Jefferson Bank and Trust Co., Mo., 345 S.W.2d 156, plus costs and expenses incident to that suit. The bond covered losses of specified types and included the following provisions upon which Jefferson seeks recovery:

"ON PREMISES

"(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees, * * *."

"FORGERY OR ALTERATION

"(D) Any loss through FORGERY OR ALTERATION of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or Property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; or any loss (1) through transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advices purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear the forged signature or endorsement or have been altered without the knowledge and consent of such customer or banking institution, * * *. Mechanically reproduced facsimile signatures are treated the same as handwritten signatures."

Losses covered were those "sustained by the Insured at any time but discovered after noon of the 1st day of November, 1957, and prior to the termination or cancelation of this bond. * * *."

Two basic disputes exist between the parties on this appeal. They are (1) do the bank's losses fall within coverage provided by the Bankers Blanket Bond (false pretenses on the premises or forgery), and (2) assuming that they do, were the losses discovered during the term of the bond?

Our opinion in the Brede case, supra, recited in considerable detail the transactions out of which the recovery by Brede from Jefferson arose. Except as necessary for clarity, we will not recite those facts again. Those interested may refer to 345 S.W.2d 156 for further details. Suffice it to say here that during the period from January 6, 1955, to October 16, 1955, sixteen checks payable to Brede Decorating, Inc., were deposited in Jefferson to the credit of Acme-Williams Decorating Co., a partnership consisting of Egan, the treasurer

of Brede, and Siviur, a salesman for Brede. The name "Brede Decorating, Inc.," was stamped with a rubber stamp on the back of each of the sixteen checks. Below that was typed or written the words "Acme-Williams Decorating Co." None of the checks bore any individual signature or name. These endorsements were placed on the checks and the deposits were made by Egan or Siviur, but the evidence did not clearly establish which one performed the acts with respect to particular checks.

This court held in the Brede case that the resolution furnished to the bank by Brede did not authorize Egan to do what was done here; that Egan had no authority, express or implied, to endorse corporate checks for deposit to any other account; and that under the evidence Jefferson was put on inquiry to determine whether Brede had authorized the actions in question. We held that the trial court was justified in entering judgment for Brede on its after-trial motion, notwithstanding a jury verdict in favor of Jefferson.

Jefferson notified Central of the Brede suit when filed and called upon Central to defend and hold Jefferson harmless under its blanket bond. Central denied liability and declined to defend. Jefferson now seeks recovery of the judgment entered against it therein, plus attorneys' fees and expenses.

Both motions for summary judgment were submitted originally to Judge Reagan. He overruled both motions, reciting that there were issues of fact in dispute which would require a jury trial, these including a sharp dispute as to when the loss was discovered

Subsequently, a pre-trial conference was held before Judge McMillian and he filed a memorandum for the clerk reciting that the parties had stipulated that there was no issue of fact involved and that the issues were entirely ones of law which could be decided by the court. It was stipulated that the motions of both parties for summary judgment should be treated as refiled and the case submitted to the court thereon. The stipulation provided for consideration of the transcript in the prior Brede case and the Supreme Court's opinion therein, as well as the pleadings, interrogatories, depositions, requests for admissions, and affidavits in the case then pending before the court.

Thereafter, the trial court made findings of fact and conclusions of law and entered judgment for Central. Findings of fact included ones that Egan, by the endorsements and deposits, wrongfully converted the funds of Brede; that the circumstances surrounding the negotiations were so unusual as to put Jefferson on inquiry to determine whether the acts were authorized by Brede; that prior to November 1, 1957, officers of Brede made inquiry at the bank in connection with the sixteen checks and the handling thereof; and that the loss thereby was discovered prior to November 1, 1957. There were conclusions of law that there was no loss either by false pretenses or by forgery; that there was no evidence to show that the loss occurred on the premises; that the bank was guilty of conversion; and that the loss was discovered prior to November 1, 1957.

■ Considering first the question of coverage, we have concluded that the acts complained of do amount to false pretenses on the premises which fall within coverage B of the bond. It is true, as Central points out, that there was no evidence as to where the endorsements on the checks were made by Egan or Siviur, or that they occurred at the bank. However, when the checks, with the endorsement of Brede thereon, were presented at the bank for deposit to the account of Acme-Williams, that constituted a representation to Jefferson that the checks had been endorsed on behalf of Brede by an authorized person for the purpose of negotiating the checks. Such representation was false, and it was a false representation to the bank on its premises at the time the checks actually

were presented for deposit. Federal Deposit Ins. Corp. v. Hartford Accident & Indemnity Co., D.C., 106 F.Supp. 602, 604[2]; affirmed 8 Cir., 204 F.2d 933, 937[5].

Central asserts that the Brede opinion has determined, as a matter of law, that what occurred was a conversion and that the blanket bond does not cover loss by conversion. This contention overlooks the fact that the suit by Brede against Jefferson was for alleged conversion by the bank of Brede's funds as a result of the bank's handling of checks which belonged to Brede. When the opinion speaks of conversion or diversion of funds, it is characterizing what the bank did, not the nature of the acts of Egan or Siviur. The Brede opinion does not hold that the acts of Egan and Siviur were not false pretenses on the premises or, for that matter, that they were not forgeries.

In this action by Jefferson against Central we are concerned with the acts of Egan and Siviur. More specifically, we are concerned with whether they amount to false pretenses on the premises or forgeries which, in turn, induced Jefferson to convert or divert Brede's funds. We hold, as above indicated, that the acts of Egan and Siviur did constitute false pretenses on the premises. Under these circumstances, we need not extend this opinion by considering whether the acts also would fall within the coverage against loss by forgery under coverage D.

This brings us to a consideration of the second question which is whether the losses were discovered during the term of the bond written by Central for Jefferson. The trial court adopted the view of Central and held as a matter of law that the losses were discovered prior to November 1, 1957, and not covered by its bond.

■ Central, seeking to sustain the action of the trial court, asserts on appeal that the opinion of this court in the Brede case established that Jefferson was put on inquiry in 1955 when the checks were pre-sented for deposit. This, says Central, constituted discovery of the loss prior to November 1, 1957, as a matter of law. We do not agree. We did hold in Brede that when the checks were presented with the endorsements heretofore described, the bank, for the purpose of determining its liability to Brede, was put on inquiry to determine whether Brede had authorized the endorsements. This did not amount to a holding, for purposes of recovery on the blanket bond, that Jefferson in fact knew at that time that the endorsements were not authorized. The holding also does not mean that a loss to the bank had occurred or been discovered at that time as a result of its handling of the checks. The language of the Bankers Blanket Bond provides coverage for losses to the bank which are *discovered* (not merely discoverable) during the term of the bond. The issue of when or whether there was actual discovery by the bank of a loss to it was not in issue in Brede and was not settled by that opinion.

■ Next, says Central, a series of six letters between Brede and Jefferson in March and April, 1957, all part of the record on appeal, should have put the bank on inquiry and constituted notice of loss to the bank. In brief, the letters from Brede contained requests for certain information and records from the bank in connection with the handling of the checks in question. The replies from Jefferson transmitted records and information to Brede. None of Brede's letters express any intention to assert a claim against the bank. On the contrary, they stated an intention to proceed against Egan and Siviur. The matter of intention is dealt with expressly in Brede's letter of March 16, 1957, as follows: "We also would like a copy of all deposit slips so that we may be able to identify the names of the various customers who sent us checks for deposit in the Brede Decorating account. We believe this will be of some help in setting up our case against Dick Siviur and James W. Egan." Instead of placing any blame

on the bank, Mr. Brede was blaming himself and his associates in the following language from that letter: "Jim Egan was one of four of us who owned the Brede Decorating Company. He was supposed to handle sales and complete management and he had full control of everything. That was the mistake we made." In addition, Brede's letter stated: "I am sure that with your help and with the bank's records we can accomplish what we want. I am certainly pleased with the information you have given me and it gives us something to work with. I will be waiting to hear from you with the photostatic copies of records I have indicated I would like to have."

Again, in a letter dated April 19, 1957, the last of the series, Brede acknowledged further information and arranged a personal conference in St. Louis on May 1, 1957. He stated: "My reason is to see how many deposits have been made so we will know what steps to take against Jim Egan and Dick Siviur. This will be our deciding point. In other words, if we feel that there was not enough money taken we won't bother. I hope that you will go along with me on the program * * *."

These letters do not provide a basis for us to hold as a matter of law that discovery of a loss by the bank occurred upon their receipt. We cannot affirm the action of the trial court in sustaining Central's motion for summary judgment.

We next proceed to a consideration of Jefferson's motion for summary judgment. Its position can be summarized in this manner: It had no notice of a claim or intended claim by Brede against the bank until receipt of a letter from Brede dated February 24, 1958, wherein demand was made for reimbursement for alleged loss resulting from handling of the sixteen checks. The letters exchanged in March and April, 1957, made no reference to any claim against the bank but talked of possible claims of Brede against Egan and Siviur. An affidavit of Jefferson's vice-president as to a conversation with Mr. Brede on May 1, 1957, recites that Mr. Brede mentioned sums due to Siviur and Egan by Brede which might offset the sums received by Egan and Siviur by means of the checks in question. The affidavit also states that the letter of February 24, 1958, was the first word the bank had that Brede claimed any rights against the bank. These letters and the affidavit, says Jefferson, establish as a matter of law that discovery of loss by the bank came upon receipt of the letter of February 24.

The blanket bond "undertakes and agrees to idemnify and hold harmless" the bank "from and against any losses sustained by the insured at any time but discovered after noon of the 1st day of November, 1957, and prior to termination" of the bond. In order to decide the issue as to discovery, we first must consider the kinds of losses which the bond covers. In general there are two categories. One is where the bank suffers a direct loss of its money or property for any of the causes mentioned in the bond, such as by theft. The other is where the bank does not suffer a direct loss but incurs a liability and as a result thereof has to pay money to another on account of a risk covered. This latter category is insurance against liability and is the kind with which we are concerned. Brede suffered an immediate loss when Egan and Siviur, by false pretenses and possibly forgery, converted the proceeds of Brede's checks to their our use, but the bank at that time suffered no loss or financial detriment although it may or may not have incurred a liability by reason of what it permitted to be done with Brede's money. If it developed that there were offsetting amounts due from Brede to Siviur and Egan, a possibility which Brede indicated to Jefferson's vice-president, or if Egan and Siviur reimbursed Brede, or if Brede concluded not to assert a claim, then the bank would not sustain any loss.

Section 3 of the Bankers Blanket Bond provides for notice to the surety company "at the earliest practicable moment after discovery of any loss hereunder," and there is a section of the bond applicable to court costs and attorneys' fees which provides, in part, as follows: "The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond. Such indemnity shall be in addition to the amount of this bond. In consideration of such indemnity, the Insured shall promptly give notice to the Underwriter of the institution of any such suit or legal proceeding; at the request of the Underwriter shall furnish it with copies of all pleadings and other papers therein; and at the Underwriter's election shall permit the Underwriter to conduct the defense of such suit or legal proceeding, in the Insured's name, through attorneys of the Underwriter's own selection. * * *"

It is to be noted that these clauses refer to the bank's liability on account of any claim which, if established against the bank, would fall within the provisions of the bond. This indicates that the time of discovery of loss mentioned in the bond is not intended to be the time when a claim of the depositor or customer is established ultimately by entry of judgment. The provisions for notice to the surety and for handling of the defense indicate otherwise.

What, then, does the bond mean when it refers to losses to the insured discovered during the period of coverage?

■ We are of the opinion that the proper principles for determining when discovery occurs under the terms of the Bankers Blanket Bond are announced in Wachovia Bank and Trust Co. v. Manufacturers Casualty Ins. Co., 171 F.Supp. 369, 375, wherein it is stated:

"In order to constitute a 'discovery' in accordance with the terms of the policy * * * there must be facts known, at the time it is asserted that the discovery was made, which would lead a reasonable person to an assumption that a shortage existed. The facts must be viewed as they would have been by a reasonable person at the time discovery is asserted, and not as they later appeared in the light of subsequently acquired knowledge. * * * [T]he mere discovery of certain facts which later lead to other facts which reveal the existence of a shortage does not necessarily constitute a discovery. Knowledge available to the insured must rise above a mere suspicion of loss. The fact that an investigation after the termination of the policy leads to the disclosure of an actual defalcation does not raise a previous suspicion to the level of a discovery. Inefficient business procedures, or irregularities and discrepancies in accounts, if as consistent with the integrity of employees as their dishonesty, does not constitute a discovery, even though dishonest acts may later be found to exist."

■ The above principles are in harmony with the definition of "discovery" given in Webster's Third New International Dictionary, as follows: "1 a: the act, process, or an instance of gaining knowledge of or ascertaining the existence of something previously unknown or unrecognized." In other words, not only must the facts be known, but they also must be recognized for what they are, which in this case would be a claim against the bank. The same thought is expressed in Insurance Law and Practice by Appleman, Vol. 10, § 6195, page 537, as follows: "A provision requiring a bank to notify the surety in case any act of dishonesty came to its

knowledge, was held not to become operative because the officers or directors of the bank learned ·of acts of the cashier which were in fact dishonest, if they were not known to be so at the time."

■ The Wachovia case dealt with the first category of loss insured against in the blanket bond, namely, a direct loss by the bank. However, the principles stated therein are applicable to the second type of loss based on legal liability of the bank for loss of another. Paraphrasing the Wachovia language, it can be stated that in order to constitute a discovery in accordance with the terms of the policy there must be facts known, at the time it is asserted that the discovery was made, which would lead a reasonable person to an assumption that the bank has suffered a loss by reason of its handling of the account of its customer. Stated otherwise and applied to the facts of this case, the time of discovery of the risk insured against is when the bank must reasonably have known and recognized that Brede had suffered a loss and that Brede apparently intended to attempt to hold the bank liable for such loss.

■ On the record before us, there is no dispute as to what occurred between Brede and Jefferson with reference to the handling of these checks. The first contact by Brede with Jefferson was in March of 1957. The letters which were exchanged at that time are before us. The affidavit of Jefferson's vice-president recites what was said in his talk with Brede on May 1, 1957. No counteraffidavit was filed by Central. Nothing further was heard from Brede after May 1, 1957, until receipt of the February 28, 1958, letter. Meanwhile, Brede did not intimate that it claimed any rights against the bank. On the contrary, Brede told the bank that there might be offsetting amounts due from Brede to Egan and Siviur and that they were investigating to determine whether to assert a claim against Egan and Siviur

for any balance due. Under these undisputed facts, we hold as a matter of law, applying the principles of Wachovia, that discovery of the loss to the bank occurred upon receipt of that letter, which was within the period covered by the blanket bond written by Central. We do not mean by this holding to state that in each and every instance the time of discovery of a loss of this character necessarily is simultaneous with formal demand by the customer on the bank, but we do hold under the particular facts of this case that this was the time of discovery of Jefferson's loss.

■ The pleadings and depositions indicate that Jefferson had a blanket bond from the American Automobile Insurance Company which covered a period of time expiring November 1, 1957, and that Jefferson called upon both American Automobile and Central for protection and indemnity following demand on the bank by Brede. It also was indicated that American Automobile paid Jefferson the sum of $1000 and took a covenant not to sue, apparently sometime in 1961. If these be the facts, then Jefferson was obligated to credit the $1000 recovery against the amount which it sought from Central; otherwise, it would in effect have a double recovery to the extent of $1000 for its loss arising from its handling of the Brede checks. The record is not sufficiently clear with reference to this transaction for us to make the deduction and enter judgment accordingly. Consequently, the case is reversed and remanded with directions to the trial court to ascertain the facts with respect to the transaction between Jefferson and American Automobile Insurance Company, and if, in fact, payment was made by American Automobile to Jefferson on a covenant not to sue in connection with liability of Jefferson to Brede for its handling of the checks involved herein, then such recovery shall be credited against the amount sought in this suit by Jefferson from Central, and judgment in favor of Jefferson shall then be entered by the trial court for the net amount of

loss, attorneys' fees and interest in accordance with the views expressed in this opinion.

EAGER, P. J., and STORCKMAN, J., concur.

DONNELLY, J., not sitting.