**COLUMBIA UNION NATIONAL BANK, Appellant,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellee.**

No. 80–2009.

United States Court of Appeals, Eighth Circuit.

Submitted July 23, 1981.

Decided Feb. 8, 1982.

Daniel M. Dibble, Kathryn H. Vratil (argued), Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., for third-party plaintiff-appellant.

Paul Scott Kelly, Jr. (argued), Stephen B. Sutton, Gage & Tucker, Kansas City, Mo., for third-party defendant-appellee.

Before LAY, Chief Judge, STEPHENSON and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Columbia Union National Bank & Trust Co. (Columbia Union) appeals from the district court's[1] grant of summary judgment in favor of third-party defendant Hartford Accident & Indemnity Co. (Hartford) in an action on a banker's blanket bond. The district court judgment was rendered after both parties, at the direction of the court, filed cross-motions for summary judgment. For reversal Columbia Union argues that the district court erred in determining that (1) Columbia Union was not the victim of false pretenses within the meaning of the banker's blanket bond, (2) any loss suffered by Columbia Union was the result of its knowing transfer of funds after bankruptcy rather than the result of false pretenses, (3) Columbia Union failed to give timely notice of its loss to Hartford, to Hartford's prejudice, and (4) Hartford's refusal to defend Columbia Union was not vexatious. For the reasons discussed below, we affirm the judgment of the district court.

The detailed facts which gave rise to the principal claim can be found in the report of the decision on that claim. *Jackson v. Star Sprinkler Co.*, 575 F.2d 1223 (8th Cir. 1978). They are repeated here only to the extent necessary to decide the issues presented to this court.

The third-party claim brought by Columbia Union is an action for attorneys' fees, costs and damages for vexatious refusal to defend. Columbia Union sued Hartford under the provisions of a banker's blanket bond which provided *inter alia* that Hartford would indemnify Columbia Union for "Loss of Property ... through ... false pretenses"[2] and for attorneys' fees and costs paid by Columbia Union in defense of any claim which would constitute a loss under the bond. The bond also required Columbia Union to promptly inform Hartford of the institution of such a claim and obligated Columbia Union to allow Hartford to defend the claim if it chose to do so.[3]

---

1. The Honorable John W. Oliver, United States Senior District Judge for the Western District of Missouri.

2. Section B of the insurance agreement provided in full that the Hartford would indemnify Columbia Union for:

    (B) Loss of Property (occurring with or without negligence or violence); through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious inexplainable disappearance, damage thereto or destruction thereof, and loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in an office listed in Item 4 of the Declarations or amendment therefor or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation.

3. Section D of the insurance agreement related to indemnification for court costs and attorney's fees:

    D. The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this

On November 29, 1971, Robert L. Jackson, Trustee in Bankruptcy for Great Western Automatic Sprinkler Company and Fabrication & Supply Company (referred to jointly as Great Western) filed a complaint in federal court which named Columbia Union as a defendant. The complaint alleged the existence of a scheme to incorporate High Point Company of the Midwest (High Point) in contemplation of the filing of bankruptcy proceedings on behalf of Great Western. High Point's formation was accomplished for the purpose of transferring Great Western's assets to High Point, making them inaccessible to Great Western's creditors. The trustee sought recovery from Columbia Union on checks payable to Great Western which were deposited to High Point's account at Columbia Union after Columbia Union became aware of Great Western's bankrupt status. The trustee did not attempt to recover for any transfers of Great Western's funds completed before Columbia Union acquired actual knowledge of the bankruptcy.

Columbia Union notified Hartford of the trustee's claim on December 1, 1971, and requested Hartford to confirm coverage under its blanket bond. Hartford informed Columbia Union that any liability established on the basis of the trustee's complaint against Columbia Union would not be considered a loss within the provisions of the bond. Columbia Union proceeded to present its own defense. The trustee later dismissed its claim against Columbia Union, but not before Columbia Union had expended over $37,000 in its defense.

During the proceedings on Columbia Union's third-party claim, the district court directed Columbia Union and Hartford to file a compilation of stipulated facts and issues with the court. The facts, all of which were incorporated in the district court's opinion,[4] established that Columbia Union knew that (1) checks payable to Great Western were used to make the opening deposit to the High Point account; (2) Great Western was in financial trouble when the High Point account was opened; (3) checks payable to Great Western were used to make subsequent deposits to the High Point account; and (4) Great Western had been adjudicated a bankrupt on April 30, 1971, by May 7, 1971, and perhaps as early as two or three days after April 30, 1981. It was also stipulated that Columbia Union continued to allow checks payable to Great Western to be deposited into the High Point account and continued to honor checks written against that account after the bank received notice that Great Western had been adjudicated a bankrupt. Another finding based on the undisputed facts was that after the bankruptcy filing Jackson had told a Columbia Union officer that he was going to "put a stop on" the High Point account in order to make the money in it available to Great Western's creditors.

After reviewing the undisputed facts, the district court ruled on the issues stipulated by the parties. In addition to the rulings which Columbia Union cites as error, the district court held that (1) facts extrinsic to the trustee's complaint and the related litigation, including facts which Hartford did know or could have known through reasonable investigation, should have been considered by Hartford in determining whether coverage under the bond existed; and (2) knowledge on the part of bank tellers and employees regarding the High Point account transactions was legally imputable to Columbia Union.

It is a well-settled principle that in ruling on a motion for summary judgment the

bond.... In consideration of such indemnity, the Insured shall promptly give notice to the Underwriter of the institution of any such suit or legal proceeding and at the request of the Underwriter shall furnish it with copies of all pleadings and other papers therein; and at the Underwriter's election shall permit the Underwriter to conduct the defense of such suit or legal proceeding in the Insured's name, through attorneys of the Underwriter's own selection. In the event of such election by the Underwriter, the Insured shall give all reasonable information and assistance other than pecuniary, which the Underwriter shall deem necessary to the proper defense of such suit or legal proceeding.

4. 496 F.Supp. 1263 (W.D.Mo.1980).

court does not decide material factual issues, rather it determines whether or not they exist. *Neff v. World Publishing Co.,* 349 F.2d 235 (8th Cir. 1965); *Dulansky v. Iowa-Illinois Gas & Electric Co.,* 191 F.2d 881 (8th Cir. 1951); *Ramsouer v. Midland Valley R.R.,* 135 F.2d 101 (8th Cir. 1943). In making this determination the court must view the evidence in the light most favorable to the non-movant. *McSpadden v. Mullins,* 456 F.2d 428 (8th Cir. 1972); *Giordano v. Lee,* 434 F.2d 1227 (8th Cir. 1970), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971); *Bryan v. Aetna Casualty & Surety Co.,* 381 F.2d 872 (8th Cir. 1967); *Dulansky v. Iowa-Illinois Gas & Electric Co., supra,* 191 F.2d 884. The grant of summary judgment will be proper only if it is shown conclusively that no genuine issue of material fact is present in the case and that judgment should be for the movant as a matter of law. *Percival v. General Motors Corp.,* 539 F.2d 1126, 1129 (8th Cir. 1976); *Ford v. Luria Steel & Trading Co.,* 192 F.2d 880, 882 (8th Cir. 1951); *Traylor v. Black, Sivalls & Bryson, Inc.,* 189 F.2d 213 (8th Cir. 1951). On appeal the non-movant also must be given the benefit of every doubt and of every favorable inference to be drawn from the evidence. *Bryan v. Aetna Casualty & Surety Co., supra,* 381 F.2d at 875. After viewing the evidence according to these principles, we find no basis for reversal of the district court's grant of summary judgment.

The law of Missouri applies to settle the issues in this diversity case.

Columbia Union contends that there were genuine issues of material fact concerning the time of the actual discovery of its loss and concerning whether its alleged delay in notifying Hartford of the loss was prejudicial to Hartford.

According to the stipulated facts, Jackson informed Columbia Union after Great Western filed for bankruptcy that he intended to "put a stop on" the High Point account and reserve the money in the

account for Great Western's creditors. In spite of this communication from Jackson, Columbia Union continued to accept checks payable to Great Western for deposit into the High Point account and to transfer funds out of the account until June 8, 1971.[5]

Columbia Union argues that its discovery of its potential loss did not occur when Jackson informed the bank that he intended to "put a stop on" the High Point account; instead, it occurred later, when the trustee's complaint against Columbia Union was actually filed. Columbia Union further argues that giving earlier notice would have been ineffective as to funds already paid out of the account. It also argues that had notice been given when Jackson informed the bank that he would "put a stop on" the High Point account, the notice would only have concerned events that had taken place up until that time, but would have excluded the filing of the November 1971 complaint. Hartford argues that it should have received notice of a claim from Columbia Union soon after Jackson's communication regarding the account. Hartford claims that this earlier notice would have permitted it to advise the bank to cease honoring checks drawn on the account and thereby minimize Columbia Union's potential loss. The parties stipulated that Jackson had called a Columbia Union officer and stated that he was going to "put a stop on" the High Point account and reserve the funds for Great Western's creditors. They also stipulated that Columbia Union gave notice of the claim against it to Hartford on December 1, 1971—two days after the complaint was filed, and seven months after the conversation with Jackson.

■ When an insurer seeks to successfully charge its insured with failure to give timely notice after discovery of a loss, the time of the asserted discovery must be the time when it was reasonable for the insured to believe and recognize that a loss had been suffered. There must be facts known to the insured at that time which would

---

**5.** The bankruptcy court directed Columbia Union to cease paying money out of the High

Point account on June 8, 1971.

lead a reasonable person to believe that a loss had been suffered. The facts should not be viewed as they may later appear in the light of subsequently acquired knowledge. *Jefferson Bank & Trust Co. v. Central Surety & Insurance Co.*, 408 S.W.2d 825 (Mo.1966). Actual written notice or formal demand on the bank is not required in every case, however. *Id.* at 832.

In *Jefferson Bank & Trust*, the court held that a series of letters to the bank formed an insufficient basis for holding that the bank had discovered its loss upon the receipt of the letters. The facts in *Jefferson Bank & Trust* are similar to those at issue here. Checks payable to a corporate depositor were being endorsed by unauthorized corporate representatives and deposited to another account at the bank. The letters, which the insurer claimed gave the bank notice of its loss, requested information from the bank concerning the negotiation of these checks. One letter indicated an intention to bring suit against the unauthorized endorsers and thanked the bank for providing its assistance. No intention to proceed against the bank was communicated until the bank received a letter ten months later which demanded payment for the fraudulently endorsed checks.

■ As was the case in *Jefferson Bank & Trust*, Columbia Union received no express warning that Jackson planned to hold the bank responsible for negotiating the checks. However, we hold that there still were facts known to Columbia Union as early as May 1971 which would have led it to have reasonable belief that a loss had been suffered. Columbia Union received notification from Jackson, known to the bank to be a lawyer who handled bankruptcies, that he intended to hold the money in the High Point account for Great Western's creditors. In addition, Columbia Union was aware that Great Western had been adjudicated a bankrupt. After acquiring this knowledge Columbia Union continued to allow High

Point to transfer funds from its account. Compliance with the notice requirement of the banker's blanket bond would have been proper at this time, and not in December 1971, after the trustee's complaint had been filed. Notification in May 1971 would also have allowed Hartford to minimize its potential loss. Between May 3, 1971, and June 8, 1971,[6] Columbia Union negotiated over $470,000 in checks drawn on the High Point account. Had notice of the claim been given in early May 1971,[7] Hartford could at least have advised Columbia Union to stop transferring funds from the High Point account. Hartford was, therefore, prejudiced by Columbia Union's delay in providing notice of the potential claim.

Columbia Union argues further that the district court erred in determining that Hartford's refusal to defend was proper and not vexatious. It also argues that in deciding whether or not to assume the defense of a claim against Columbia Union, Hartford was obligated to look beyond the language of the trustee's complaint to facts which were known to Hartford or which could reasonably have been discovered. Hartford argues that the blanket bond does not cover the knowing transfer of funds of a bankrupt when the bank is aware of the bankruptcy. Hartford argued below that in determining whether defense of the suit against Columbia Union was warranted it was required to consider only the language of the complaint and not any extrinsic facts.

■ The insured will be allowed to recover for a refusal to defend under an insurance policy when that refusal is vexatious. Mo.Rev.Stat. § 375.420. In order to prove that the refusal to defend was vexatious, the insured must show that the refusal was without reasonable or probable cause or excuse. *Dixon v. Business Men's Assurance Co.*, 365 Mo. 580, 285 S.W.2d 619, 629 (1955) (banc); *Hay v. Utica Mutual Insur-*

---

6. *See* note 5 *supra.*

7. Columbia Union stipulated that it knew of Great Western's bankrupt status by May 7,

1971, and possibly as early as two to three days after the bankruptcy proceedings on April 30, 1971.

ance Co., 551 S.W.2d 954 (Mo.App.1977); Housing Authority v. Baumann, 512 S.W.2d 436, 440 (Mo.App.1974). To determine whether a refusal to defend was excusable or reasonable, the facts must be viewed as they would have appeared to a prudent person before trial. If the refusal appeared willful or unreasonable in this light, the insurer will be held liable to the insured under the statute. *Hay v. Utica Mutual Insurance Co., supra,* 551 S.W.2d at 958. Because the statute is penal in nature, it must be strictly construed. *Western Casualty & Surety Co. v. Southwestern Bell Telephone Co.,* 396 F.2d 351, 356 (8th Cir. 1968) (applying Missouri law); *Hay v. Utica Mutual Insurance Co., supra,* 551 S.W.2d at 958; *State ex rel. United States Fidelity & Guaranty Co. v. Walsh,* 540 S.W.2d 137, 141 (Mo.App.1976) (banc).

Before declining to defend, however, an insurer has an obligation to look beyond the allegations made in the complaint against its insured to facts known to the insurer or facts which can be discovered through a reasonable investigation. *State ex rel. Inter-State Oil Co. v. Bland,* 354 Mo. 622, 190 S.W.2d 227, 229 (1945) (banc); *Marshall's U.S. Auto Supply, Inc. v. Maryland Casualty Co.,* 354 Mo. 455, 189 S.W.2d 529 (Mo.1945); *City of Palmyra v. Western Casualty & Surety Co.,* 477 S.W.2d 428 (Mo.App.1972). Hartford, as the insurer here, was responsible for complying with this requirement.

Under the facts of this case, there was no vexatious refusal to defend when Hartford failed to represent Columbia Union under the blanket bond. It was reasonable for Hartford to decline to defend the suit against Columbia Union because, as discussed above, Columbia Union gave such late notice of its potential loss. This late notice violated a condition precedent to coverage under the policy; therefore, Hartford's refusal to defend was not vexatious. *See Frisella v. Reserve Life Insurance Co.,* 583 S.W.2d 728 (Mo.App.1979); *Roberts v.*

*Jersey Insurance Co.,* 457 S.W.2d 244 (Mo. App.1970).

The decision below is affirmed.