**EMPIRE BANK, Appellant,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellee.**

No. 93–3309.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1994.

Decided June 16, 1994.

Craig A. Smith, Springfield, MO, argued, for appellants.

James E. McDaniel, St. Louis, MO, argued, for appellee.

Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and EISELE,* District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Empire Bank, having paid two-hundred thousand dollars to settle a customer's claim against it, seeks to recoup its losses from its financial institution bond carrier, Fidelity & Deposit Company of Maryland. The claim arose from Empire's cashing checks payable to Empire's customer, Campbell 66 Express, Inc., and checks drawn by Campbell 66 and payable to third persons. The district court[1] entered judgment for Fidelity & Deposit, on three grounds: that the loss did not result from a type of activity covered by the bond; that Empire discovered the claim before the inception of the bond period; and that the loss was excluded from coverage because it was caused by Empire's employees. *Empire Bank v. Fidelity & Deposit Co.*, 828 F.Supp. 675 (W.D.Mo.1993). The Bank argues that the court erred in each respect. We affirm the judgment of the district court.

Randall Walker was president and chief executive officer of Campbell 66 Express, Inc., a trucking company. Trula Walker is his wife.

---

* The HONORABLE GARNETT T. EISELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

At Trula Walker's request, the Campbell 66 bookkeeper issued checks, which were drawn on a Campbell 66 account at another bank and made payable to Trula Walker's household employees. Between 1983 and 1986 Trula cashed $47,734.00 in such checks at Empire Bank. On one occasion, Trula Walker signed the name of the employee in the presence of the bank teller, and on the other occasions, she presented the checks already complete with forged endorsements. She refused to endorse the checks herself. It is Empire's official policy to require endorsement by the presenter of third party checks, but it waived this requirement in Trula Walker's case, at the direction of Floyd Tucker, an Empire vice president. There was evidence that Tucker simply instructed the tellers to "do what [Trula] wanted."

Similarly, between 1982 and December 1985, Randall Walker took $340,189.08 worth of checks payable to Campbell 66 and cashed them at Empire. In exchange for the checks, Walker received either cash or cashier's checks payable to him or to Campbell 66. Empire's internal policy requires that before an individual can cash a corporate check, Empire must have a corporate resolution on file authorizing such transactions. There were, however, no Campbell 66 corporate resolutions on file at Empire Bank, except one permitting Campbell 66 to maintain certificates of deposit there. Furthermore, after January 10, 1985, Empire adopted a policy prohibiting the cashing of checks payable to a corporation. The checks Randall Walker cashed were approved for payment by Floyd Tucker.

Campbell 66 filed bankruptcy in 1986. In December 1987 its bankruptcy trustee filed suit against Empire to recover the money paid on the checks. The complaint stated twelve causes of action arising out of the series of check-cashing transactions, ranging from a claim under the Uniform Commercial Code, Mo.Rev.Stat. § 400.3–419 (1988) (repealed L.1992 S.B. 448), to negligence and conspiracy to misappropriate. Empire settled the claims for $208,735.30. Empire sought indemnity from its bonding company, Fidelity & Deposit, which denied coverage.

Empire's financial institution bond contained several different types of coverage in one policy. Empire made claims under the "Forgery or Alteration" coverage and the "On Premises" coverage, which, *inter alia*, covers loss of property resulting from "theft, false pretenses, common-law or statutory larceny, committed by a person present in an office or on the premises of the [i]nsured...." The forgery and "On Premises" coverages were subject to an exclusion for: "loss caused by an Employee" except if covered under the fidelity portion of the bond or "resulting directly from misplacement, mysterious unexplainable disappearance or destruction of or damage to Property." The policy stated that it applied to "loss discovered by the Insured *during* the Bond period." (Emphasis added). Empire sued Fidelity & Deposit in this diversity case, governed by the law of Missouri.

The district court, after trial, held that Empire's loss was not covered by the bond because it was not caused by a forgery or false representation. It found that Trula Walker's forgeries did not cause Empire's loss. "The forged endorsements were not the reason that Empire suffered a loss; it was Empire's failure to follow their [sic] required procedures and good banking practice and insist upon Trula Walker's endorsements upon the checks." 828 F.Supp. at 678. As to Randall Walker's transactions, "there was no forgery by Randall Walker when he signed his own name to the checks as he was authorized to sign checks as an officer of Campbell 66." *Id.* The court found there was no evidence that Walker made any false representation in order to get the checks cashed. *Id.*

The court also found that Empire discovered the claim before the inception of the policy in August 1987, which also defeated its claim, since the policy only covered losses discovered during the bond period. *Id.*

Finally, the court held that the losses were caused by Empire's own employees. *Id.* The court based this conclusion on the fact that in cashing the checks, Empire violated its own internal policies requiring: (1) endorsement of the presenter in cashing a third party check; and (2) a corporate resolution

in Empire's files authorizing an individual to cash a corporate check. Also, the Randall Walker transactions occurring after January 10, 1985, violated Empire's policy against cashing corporate checks.

On appeal, Empire attacks each of the district court's three bases for its decisions: lack of coverage; discovery antedating the policy; and the "loss caused by an employee" exclusion. Since upholding any of the district court's three rulings would defeat Empire's claim, we need only discuss the exclusion, as we conclude it applies.

The district court made a number of very explicit findings in concluding that Empire's loss was excluded from coverage:

> Empire's losses in this case were all caused by the intentional acts of an officer of Empire instructing employees to violate its prescribed procedures and reasonable commercial banking practices in order to accommodate the Walkers. Mr. Tucker was obviously currying favor with the Walkers in hopes of getting Randall Walker to move Campbell 66 banking business from Commerce Bank of Springfield to Empire.

*Id.* at 679. The court specifically found that the losses from the Trula Walker checks were caused by Floyd Tucker's conduct:

> While the fact that Vice President Floyd Tucker instructed the teller to "do whatever Trula wants," may relieve the tellers of any liability for cashing the third party checks, it should not—and does not—relieve Empire of the consequences of ignoring its own standard operating procedure and sound banking policy. The forged endorsements were not the reason that Empire suffered a loss; it was Empire's failure to follow their [sic] required procedures and good banking practice and insist upon Trula Walker's endorsements upon the checks.

*Id.* at 678. The court also made a corresponding finding about the loss from the Randall Walker transactions:

> The losses suffered by Empire attributable to the conduct of Randall Walker were directly caused by ignoring the established policies of Empire which expressly prohibited: (1) the cashing of corporate checks in the absence of a corporate resolution in the Corporate Authorization Book to indicate what officers could act for the corporation; and (2) the cashing of corporate checks by an officer of a corporation at any time after January 10, 1985.

*Id.*

Empire does not challenge the district court's findings of fact, but complains that the district court erred in interpreting the bond provisions. The district court's construction of the bond was based on the bond language, rather than any extrinsic evidence; its interpretation is therefore a question of law, subject to plenary review. *Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1023 (8th Cir.1992). Our review of the district court's determination of state law is *de novo*, giving no deference to the decision of the district court. *Salve Regina College v. Russell*, 499 U.S. 225, 239, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991).

Empire argues first, that the district court improperly read a negligence defense into the bond and second, that the exclusion for losses caused by an employee should be construed to mean losses caused *solely* by a bank employee. In these arguments Empire first accuses the district court of wrongfully adding a term into the bond, then asks us to add a different term.

The argument that the district court added a negligence defense ignores the fact that the bond language excludes losses caused by a bank employee, whether negligent or not. In this respect, the bond in this case differs materially from that in *Fidelity & Casualty Company v. Bank of Altenburg*, 216 F.2d 294, 301 (8th Cir.1954), *cert. denied*, 348 U.S. 952, 75 S.Ct. 440, 99 L.Ed. 744 (1955), which expressly covered any loss through false pretenses "whether effected with or without . . . negligence on the part of any of the Employees." *Id.* at 296.[2] There

---

**2.** As an aside, we observe that if degrees of culpability were relevant, the district court found

intentional misconduct in this case.

was no mention in *Bank of Altenburg* of any exclusion like the one in this case. Therefore, we reject Empire's argument that *Bank of Altenburg* dictates the result in this case.

■ Empire's second argument is that the exclusion can apply only to losses caused *solely* by a bank employee or of which a bank employee was the proximate cause. There is no support in the bond language for the theory that the bank's act must be the *only* cause of the loss. As for proximate cause, the district court in effect found that acts of Floyd Tucker were the proximate cause of the loss. We need not attempt to discern the specific legal theory motivating Empire to settle Campbell's lawsuit. Although many alternative claims were pleaded, the settlement documents do not identify the basis for the settlement, consistent with most such documents. Suffice it to say that the conduct of the bank officer causing the exclusion to apply would be relevant to all pleaded theories.

Therefore, the district court correctly found that the bond's exclusion applies and prevents Empire from recovering from Fidelity & Deposit for its loss.[3] We affirm the judgment of the district court.

---

3. Empire places great reliance on *Jefferson Bank and Trust Company v. Central Surety and Insurance Corporation,* 408 S.W.2d 825, 832 (Mo. 1966), which interprets the coverage language of a banker's bond and the language concerning discovery during the bond period. *Jefferson Bank* has no holding relevant to the exclusion issue on which we base our decision.