In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1073

HAYES LEMMERZ INTERNATIONAL, INC.,

*Plaintiff-Appellant,*

*v.*

ACE AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:08-cv-288—**Philip P. Simon**, *Chief Judge*.

ARGUED JUNE 1, 2010—DECIDED AUGUST 31, 2010

Before BAUER, POSNER, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal from a judgment dismissing a diversity suit by a disappointed insured against its insurance company presents issues of Indiana insurance law.

The defendant, ACE Insurance Company, had issued a "Workers Compensation and Employers Liability Insurance Policy" to Hayes Lemmerz International, a manufacturer of aluminum and steel wheels, and to

subsidiaries of HLI (as we'll call the plaintiff). One of those subsidiaries is Hayes Lemmerz International-Huntington (Huntington). A workers compensation and employer liability policy is a standard liability insurance policy designed to insure an employer primarily for liability under workers' compensation laws, but secondarily for liability for workplace accidents not covered by such laws—for example, liability for a claim by an employee's family member injured by a workplace injury to the employee (as when an injury to a pregnant employee injures her fetus as well), or for claims for workplace injuries not covered by workers' compensation, such as injuries to farm employees or an injury to an employee by a fellow employee motivated by spite. See, e.g., *Pomer v. Schoolman*, 875 F.2d 1262, 1266-67 (7th Cir. 1989); *Forum Ins. Co. v. Allied Security, Inc.*, 866 F.2d 80 (3d Cir. 1989). Such insurance coverage fills gaps in workers' compensation law that sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief. *Schmidt v. Smith*, 713 A.2d 1014, 1016-17 (N.J. 1998); *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 884 P.2d 1048, 1052 (Cal. 1994).

In 2005 a worker injured in an accidental explosion at a plant in Indiana owned by Huntington, and the widow and estate of another worker killed in the explosion, brought a tort suit against both HLI, the parent, and Huntington, the subsidiary, in an Indiana state court. The complaint alleged that the plant "was owned and operated by [Huntington] and/or [HLI]," and that they had failed to exercise reasonable care to prevent the accident.

The complaint did not identify either company as an "employer" of the accident victims and of course the workers at a work site are often not employees of the site's owner. The plaintiffs would not have wanted to describe either defendant as the employer, because the exclusive remedy for workplace injuries is usually and in this instance a claim under workers' compensation law, filed with an administrative agency, rather than a conventional tort suit, which was the nature of the suit against HLI and Huntington. Ind. Code. § 22-3-2-6; *Sims v. United States Fidelity & Guaranty Co.*, 782 N.E.2d 345, 349-50 (Ind. 2003). The plaintiffs had already filed a workers' compensation claim, naming both HLI and Huntington as the employers of the accident victims, and had received workers' compensation, though whether paid by both companies, and if so in what proportions, we cannot determine. Had the tort suit named them as employers, the court would at once have dismissed them from the case.

No doubt the plaintiffs were hoping that not naming either company as their employer would give them a shot at obtaining common law damages, which are more generous than workers' compensation awards. This was not necessarily a disreputable (though as we're about to see it was an ineffective) maneuver. If Huntington was their only employer, HLI might not (were it not for a quirk of Indiana law discussed below) have the protection of workers' compensation law and might therefore be liable in tort if, for example, it had influenced its subsidiary's choice of safety measures. A parent (like HLI) or other affiliate enjoys limited liability, but

this just means it isn't liable for an affiliate's torts (including torts covered by workers' compensation) just by virtue of the relationship. If however it plays a causal role in the affiliate's negligence, it is liable directly rather than vicariously to the victim, and under normal tort law rather than workers' compensation law, since the injured worker is the affiliate's employee rather than the parent's. *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 240-41 (Ill. 2007); *Gulfstream Land & Development Corp. v. Wilkerson*, 420 So. 2d 587, 588-90 (Fla. 1982); *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 662-63 (6th Cir. 1979). That is just a special instance of the general principle that a nonemployer can be sued in tort for injury to a worker without regard to workers' compensation law, though the worker's remedy against his employer is given exclusively by that law. E.g., *Turner v. Richmond Power & Light Co.*, 756 N.E.2d 547, 552-53 (Ind. App. 2001); *Campbell v. Eckman/Freeman & Associates*, 670 N.E.2d 925, 929-30 (Ind. App. 1996); *Reboy v. Cozzi Iron & Metal, Inc.*, 9 F.3d 1303, 1304-05, 1308 (7th Cir. 1993) (Indiana law).

HLI and Huntington knew of course that Huntington was the employer of the accident victims and that HLI, the parent corporation, was not. But the lawyer handling the tort suit for the two companies seems not to have known (maybe the plaintiffs didn't know either) that in 2001 Indiana, reacting negatively to a decision by the Indiana Supreme Court confirming the understanding of affiliate liability set forth above, *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1020 (Ind. 1995), had amended its workers' compensation law to provide that "a

parent corporation and its subsidiaries shall each be considered [for purposes of workers' compensation law] joint employers of the corporation's, the parent's, or the subsidiaries' employees." Ind. Code § 22-3-6-1(a). Hence HLI was insulated from tort liability to the victims of the explosion: by virtue of being deemed a joint employer, its liability to them was governed exclusively by workers' compensation law even if in other states it could have been sued as a tortfeasor had it contributed to the injuries to its affiliate's employees.

HLI promptly notified ACE of the tort suit and asked it to acknowledge coverage. The insurance policy entitled ACE to take control of HLI's defense to the suit, if it wanted to. See *Paint Shuttle, Inc. v. Continental Casualty Co.*, 733 N.E.2d 513, 520-21 (Ind. App. 2000); *Transport Ins. Co. v. Post Express Co.*, 138 F.3d 1189, 1193 (7th Cir. 1998). Evidently it didn't want to. Instead it agreed to pay half the combined litigation expenses of HLI and Huntington. HLI argues, and we accept for purposes of this appeal, that ACE believed that Huntington was the only employer of the accident victims, as indeed it was in the usual sense (both legal and lay) of the word "employer": it had hired them and directed their work and paid them, though (as is not uncommon) they received certain benefits under an ERISA plan that covered employees of other Hayes Lemmerz affiliates as well.

One might think that ACE would have known that HLI would be deemed an employer under Indiana's workers' compensation law; and if so and it had assumed the defense of both defendants it would if alert have moved

to dismiss the suit because both were employers of the accident victims by virtue of the 2001 amendment. But the amendment was recent and, though it seems clear enough, apparently there was some doubt about its meaning. Carol Modesitt Wyatt, "Recent Survey of Worker's Compensation Law," 34 *Ind. L. Rev.* 1115, 1124 (2001). Indeed, the Indiana trial court initially ruled that HLI was not an employer of the accident victims. In any event ACE was not handling the defense.

HLI did tell ACE that it disagreed with ACE's decision to pay only half the companies' litigation costs, but it did not pursue the issue and instead tried for the next two years to persuade the state court that it was not an employer of the accident victims and therefore (though there was no "therefore," since an injurer can be liable in tort to someone else's employee) it could not be liable to them. In the course of this futile effort it incurred attorneys' fees and related litigation expenses of some $267,000, which ACE refused to reimburse, precipitating this suit to recover them. HLI would have avoided most of the expense had it moved to dismiss the suit on the basis of the amendment. Eventually it did wake up and as part of a settlement was dismissed from the suit with prejudice, on the ground that it was indeed an employer under the amended workers' compensation law.

HLI's basic position is simple: because it was an employer, ACE was obliged by the terms of the insurance policy to defend it either directly or by reimbursing its defense costs. ACE ripostes that HLI was not named as an employer in the suit. But neither was Huntington, yet ACE agreed to reimburse the companies for half the cost

of their defense; and HLI asked ACE to acknowledge coverage of both companies. The tort claims against HLI fell within the scope of the insurance policy; that they had no possible merit, because of the amendment to the workers' compensation law, was irrelevant. "The insured who has bought a liability policy that entitles him to defense as well as indemnification wants to be defended against claims of liability regardless of their merit." *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 622-23 (7th Cir. 2002); see *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. App. 1991); *National Fire & Casualty Co. v. Norris ex rel. West*, 107 F.3d 531, 534-35 (7th Cir. 1997) (Indiana law).

But we must consider what exactly triggers the duty to defend. A much-criticized (but never overruled) decision by the Indiana Supreme Court states that the "duty to defend is determined solely by the nature of the complaint." *Transamerica Ins. Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991). This could be interpreted to mean that the insurance company only has to read the complaint. But that interpretation is not inevitable; "nature of the complaint" might refer to the allegations of the complaint plus additional facts known or reasonably ascertainable by the insurer. This interpretation has support in Indiana law, *Monroe Guaranty Ins. Co. v. Monroe*, 677 N.E.2d 620, 624 (Ind. App. 1997); *Indiana Farmers Mutual Ins. Co. v. North Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1268-69 (Ind. App. 2009); cf. *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1291 (Ind. 2006), reflecting the "modern trend" in insurance law. 14 *Couch on Insurance* § 200:17 (3d ed, 2007); see, e.g., *Scottsdale Ins. Co. v. MV Transportation*, 115 P.3d 460, 466 (Cal. 2005);

*Advantage Homebuilding, LLC v. Maryland Casualty Co.*, 470 F.3d 1003, 1007-08 (10th Cir. 2006) (Kansas law); *Columbia Union Nat'l Bank v. Hartford Accident & Indemnity Co.*, 669 F.2d 1210, 1214-15 (8th Cir. 1982) (Missouri law). A readily ascertainable fact in this case was that HLI is an employer by virtue of the 2001 amendment to Indiana's workers' compensation law.

HLI admits it made a dreadful mistake in denying in the tort suit that it was an employer. It blames its law firm for the mistake, and has sued the firm for malpractice. We cannot understand why any part of the costs of that mistake should be shifted to ACE. HLI did not ask ACE to handle its defense against the tort suit, but only for reimbursement of its legal expenses. The duty of reimbursement is limited to *reasonable* expenses, *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1027 (Ind. App. 1999), as otherwise the insured would have no incentive to economize; and HLI's expenses were unreasonable—that indeed is the premise of its malpractice suit. It is reduced to arguing that ACE should have told it that its law firm was making a dumb defense—that it had only to invoke the 2001 amendment to the workers' compensation law to quash the suit. But a liability insurer that does not control the defense of the suit against its insured is not obliged to give advice to the insured on legal strategy, whether in the name of "good faith" or any other doctrine of insurance law. That way madness lies; any time an insured lost a tort suit it would accuse its insurer of having failed to intervene with correct legal advice, thus making the insurer jointly liable with the insured's law firm for the latter's malpractice. We're not surprised to find no previ-

ous case in which an insured has made so audacious a claim for defense costs.

Because HLI was, by virtue of Indiana law, a joint employer, ACE was contractually obligated to reimburse the reasonable expense of HLI's getting itself dismissed from the tort suit. But HLI is not claiming that ACE has refused to pay that modest amount. It is complaining that ACE breached its duty to defend by failing to advise HLI that HLI's law firm was not defending the suit properly. ACE had no duty to provide its insured's lawyers with legal advice.

AFFIRMED.