In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-1988 and 12-2091

TKK USA, INC., formerly known as
THE THERMOS COMPANY,

*Plaintiff-Appellee, Cross-Appellant*,

*v.*

SAFETY NATIONAL CASUALTY CORP.,

*Defendant-Appellant, Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 C 8146 — **James B. Zagel**, *Judge.*

ARGUED FEBRUARY 13, 2013 — DECIDED AUGUST 21, 2013

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Safety
National Casualty Corporation ("Safety National") sold an
excess liability insurance coverage policy to plaintiff-appellee
TKK USA, Inc., which was formerly known as The Thermos
Company. The policy covered excess losses resulting from
liability imposed on TKK "by the Workers' Compensation or
Employers' Liability Laws" of Illinois. The central issue in

these appeals is whether the policy covers TKK's costs to defend and settle a lawsuit brought under Illinois common law by the widow of a former TKK employee. The lawsuit alleged that TKK's negligence caused the employee to become ill with and eventually die from mesothelioma. The common law negligence claim was subject to a rock-solid affirmative defense. The Illinois Workers' Occupational Diseases Act bars common law claims by or on behalf of an employee against a covered employer "on account of damage, disability or death caused or contributed to by any disease contracted or sustained in the course of the employment." 820 Ill. Comp. Stat. 310/11.

After Safety National denied TKK's claim for coverage of losses above the policy floor, TKK filed this suit. The district court granted summary judgment in favor of TKK for its costs in defending and settling the widow's suit. *TKK USA Inc. v. Safety Nat'l Cas. Corp.*, No. 10 C 8146, 2011 WL 2600585 (N.D. Ill. June 29, 2011); *TKK USA Inc. v. Safety Nat'l Cas. Corp.*, No. 10 C 8146, 2011 WL 7138875 (N.D. Ill. Dec. 2, 2011). The district court found that the policy's reference to "Employers' Liability Laws" included the widow's common law claim against the employer for negligence even if the claim ultimately could not prevail because of the statutory bar. The policy applies to claims under "Employers' Liability Laws" even if the claims are "wholly groundless, false, or fraudulent." The district court denied, however, TKK's claim for attorney fees and costs in the coverage lawsuit itself, with the exception of a modest fee award for what the district court considered a vexatious motion to reconsider the merits of its decision. Both sides have appealed.

We affirm the district court's decisions in all respects. The key policy term—"Employers' Liability Laws"—is broad enough to include claims brought under the common law, even "groundless" claims for which the employer appears to have a solid affirmative defense. We also find no error in the district court's treatment of the fee claims.

I.  *Undisputed Facts and Procedural Background*

The district court had jurisdiction under 28 U.S.C. § 1332(a) because the parties have different citizenship. We have jurisdiction under 28 U.S.C. § 1291. We apply Illinois substantive law, the law of the forum, since the parties do not dispute the choice of law. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345–46 (7th Cir. 2010). We review *de novo* the district court's grant of summary judgment. There are no disputed issues of material fact, and the interpretation of an insurance policy is well-suited to resolution as a matter of law on summary judgment. *Id.*; *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993).

A.  *The Insurance Policy*

TKK purchased from Safety National an excess liability insurance coverage policy for injury and illness claims by employees. The policy coverage "applies only to Loss sustained by the EMPLOYER because of liability imposed upon the EMPLOYER by the Workers' Compensation or Employers' Liability Laws" of Illinois, and Safety National "agrees to indemnify" TKK for "Loss." App. 19. "Loss" is defined broadly and in pertinent part as follows:

> "Loss"—shall mean actual payments legally
> made by the EMPLOYER to Employees and their
> dependents in satisfaction of: (a) statutory bene-
> fits, (b) settlements of suits and claims, and (c)
> awards and judgments. "Loss" shall also include
> Claim Expenses, paid by the EMPLOYER, as
> defined in Paragraph (2) of this section."

*Id.* "Claim Expenses" are central to this case, and the policy defines the term in pertinent part as:

> interest upon awards and judgments and the
> reasonable costs of investigation, adjustment,
> defense, and appeal … of claims, suits or other
> proceedings brought against the EMPLOYER
> under the Workers' Compensation or Employ-
> ers' Liability Laws [of Illinois] … for bodily
> injury or occupational disease … even though
> such claims, suits, proceedings or demands are
> wholly groundless, false, or fraudulent … .

*Id.* The policy does not include a definition for the other term that is critical to this case: "Workers' Compensation or Employers' Liability Laws."

The policy is an excess liability policy. TKK retained primary responsibility for defending, settling, or paying claims up to $275,000 per occurrence, at which point the excess coverage began. Safety National did not undertake any duty to defend TKK in any covered claims, though it had the right to intervene in the defense if it chose to do so to protect its interests. Instead, Safety National agreed to pay covered losses,

including claim expenses and thus costs of defense, as they were incurred in excess of the $275,000 floor.

### B. *The Underlying Lawsuit*

In August 2009, Juanita Perkins filed suit in Illinois state court on behalf of her late husband, Blannie Perkins, who died of mesothelioma. The complaint named several defendants, including TKK, and alleged in part that Mr. Perkins contracted mesothelioma as a result of workplace exposure to asbestos while employed by TKK. The complaint sought damages from TKK on several theories, including negligence.[1] As required by the policy, TKK gave Safety National timely notice of the lawsuit. Safety National told TKK that the policy did not cover the Perkins lawsuit. TKK defended the lawsuit on its own, ultimately incurring more than $400,000 in legal fees before it settled with Mrs. Perkins for $15,000.

### C. *Illinois Law on Occupational Diseases*

Under Illinois law, employees who contract workplace diseases or suffer workplace injuries may recover damages from their employer exclusively via the Illinois Workers' Occupational Diseases Act ("ODA"), 820 Ill. Comp. Stat. 310/1 *et seq.*, and the Illinois Workers' Compensation Act ("WCA"), 820 Ill. Comp. Stat. 305/1 *et seq.*, respectively. The ODA provides that the "compensation herein provided for shall be the full, complete and only measure of the liability of the employer … [and] this Act shall be exclusive and in place of any and all other civil liability whatsoever, at common law or otherwise … ." 820 Ill. Comp. Stat. 310/11. The bar to common

---

[1] The Perkins complaint also alleged willful and intentional conduct by TKK, but the Safety National policy excludes coverage for such claims.

law claims does not apply if the disease was not caused accidentally, did not arise out of employment, was not incurred during the course of employment, or is not compensable under the ODA. *Hartline v. Celotex Corp.*, 651 N.E.2d 582, 584 (Ill. App. 1995). The ODA thus provides a complete defense for common law negligence claims by an employee or his surviving dependents against a covered employer based on a disease caused in the course of employment. The implication is as simple as it seems: the Perkins negligence claim was groundless. TKK had available a solid affirmative defense because the ODA barred the Perkins claim. That does not mean, however, that the defense did not have to be asserted.

II. *Legal Analysis*

   A. *The Scope of Policy Coverage and the Perkins Lawsuit*

Safety National argues that because the ODA provides the only form of recovery for the claims in the Perkins lawsuit and the lawsuit did not request relief under the ODA, the costs of defending and settling the lawsuit do not qualify as, in the terms of the policy, a "Loss sustained by the EMPLOYER because of liability imposed upon the EMPLOYER by the Workers' Compensation or Employers' Liability Laws" of Illinois. TKK responds that the Perkins lawsuit was a claim made on behalf of an employee against his employer asserting liability and requesting damages for a disease contracted in the workplace, and that its defense and settlement costs therefore qualify as a "Loss sustained by the EMPLOYER because of liability imposed upon the EMPLOYER by the Workers' Compensation or Employers' Liability Laws." The fact that TKK had available an affirmative defense under the ODA does

not affect coverage, TKK argues, because the policy provides coverage for "claims, suits, proceedings or demands [that] are wholly groundless, false, or fraudulent."

The pivotal question, then, is whether a common law claim for negligence falls within the meaning of "Employers' Liability Laws" even if the claim is subject to a solid defense under the ODA. The text of the policy shows that the answer does not depend on the ultimate merits of the claim. Coverage is available, after all, for claims that are "wholly groundless, false, or fraudulent." The policy contains no definition of "Employers' Liability Laws," and we know the policy language was intended to be flexible, applying in any state in the United States. We see nothing in the text of the policy providing that "Employers' Liability Laws" is limited to statutes, to the exclusion of the common law.

When interpreting an insurance contract under Illinois law, we give the terms their plain and ordinary meanings. *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 767 (7th Cir. 2010); *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004); *Gray v. Great Cent. Ins. Co. of Peoria*, 283 N.E.2d 261, 263–64 (Ill. App. 1972) ("It has long been held in Illinois that the language of insurance policies, and contracts in general, is to be understood and applied in its most commonly accepted sense and, if the words used are plain on their face when given the meanings ordinarily imported in common speech, they should not be given a technical connotation which would pervert their meaning.") (internal citations omitted). Courts must also, of course, enforce valid limitations on coverage based on their plain meanings. *Gray*, 283 N.E.2d at 263–64.

The problem for Safety National is that nothing in the policy language indicates an agreement to exclude common law claims from the broad term "Employers' Liability Laws." The best argument for Safety National is that statutes like the Illinois ODA and WCA have been adopted widely in the United States and have (almost) entirely displaced the common law with respect to employees' negligence claims against their (covered) employers. On this reasoning, the policy term "Employers' Liability Laws" should be understood as a term of art that applies only to statutes that displace the common law. We do not think the term should be understood so narrowly, at least not without much clearer signals of that intention in the policy itself.

First, the statutes that displace the common law, like the Illinois ODA and WCA, are confined by their own definitions and exceptions. Section 2 of the ODA cross-references certain categories of employers excluded by the WCA and excludes them as well. 820 Ill. Comp. Stat. 310/2(a). The relevant provisions of the WCA exclude some households employing domestic workers, as well as small agricultural enterprises and corporate officers who elect to opt out of coverage. 820 Ill. Comp. Stat. 305/3, ¶¶ 17–19. For these excluded employers and employees, the ODA creates what amounts to a statutory claim for negligence that is also subject to the exclusivity provision. See 820 Ill. Comp. Stat. 310/3.

Thus, while the ODA's statutory provisions do cover nearly all potential common law claims, they do not cover the entire terrain. Even more important, Illinois courts do not interpret the ODA as quite as complete a death knell for common law negligence actions against employers as Safety National claims

it is. Illinois courts understand the ODA's and WCA's exclusivity provisions as affirmative defenses that undercut a common law negligence action against an employer *when they are raised*. See, *e.g.*, *Washington v. Draper & Kramer, Inc.*, 298 N.E.2d 270 (Ill. App. 1973) (reversing and remanding grant of summary judgment to employer upon determining that employee was not covered by WCA; further proceedings were necessary to develop employee's negligence action stemming from slip and fall on employer's premises).[2] For example, "an employer may decide against invoking the Act in the hope that the plaintiff's common law negligence claim will fail, thereby enabling it to escape liability completely." *Geise v. Phoenix Co. of Chicago*, 639 N.E.2d 1273, 1276 (Ill. 1994) (interpreting exclusivity provision in WCA, which mirrors that in ODA). Put simply, "the potential for [common law] tort liability exists until the defense is established." *Doyle v. Rhodes*, 461 N.E.2d 382, 387 (Ill. 1984).

In *Doyle*, the Illinois Supreme Court had to determine if the fact that the employee's potential negligence claim against the employer would be barred by the WCA's exclusivity provision meant that the employer was immune from requests for third-party contributions for an employee's successful negligence suit against that third party. The Illinois Supreme Court found

---

[2] The WCA and ODA are so closely related that the Illinois Supreme Court interprets them together and uses case law interpreting each to interpret the other. *Dur-Ite Co. v. Indus. Comm'n*, 68 N.E.2d 717, 720 (Ill. 1946) ("The Workmen's Occupational Diseases Act and the Workmen's Compensation Act are homologous."); see also *Bercaw v. Domino's Pizza, Inc.*, 630 N.E.2d 166, 170 (Ill. App. 1994) (discussing and comparing cases analyzing WCA and ODA interchangeably). We therefore benefit from and cite Illinois case law considering both statutes.

that it did not, in part because, unless and until the employer raised the affirmative defense in the ODA, the employer was still subject to common law tort liability: "Thus, the plaintiff may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers' Compensation Act gives him, and on occasion the employer may choose not to raise it in the hope that the plaintiff will be unable to prove negligence to a jury's satisfaction." *Id.* at 386–87 (internal citations omitted).

Under the ODA as interpreted by Illinois courts, therefore, the common law can apply to claims for occupational disease in at least two different contexts: cases in which the ODA's exclusivity provision is not asserted, and the statutory creation of a negligence action for non-covered employees. These gaps do not decide the issue here, but they show that the term "Employers' Liability Laws" should not be restricted solely to statutory claims under the ODA against covered employers.

Second, even employers covered by the ODA have found themselves litigating the boundaries of the WCA and the ODA. Injured and sick employees who find the statutory compensation inadequate have tried innumerable theories for avoiding the statutory bars and returning to the common law. See, *e.g., Handzel v. Kane-Miller Corp.*, 614 N.E.2d 206, 207 (Ill. App. 1993) (plaintiff argued that negligence action against employer for failure to provide adequate medical care to employee suffering heart attack was not barred by WCA); *Dobrydnia v. Indiana Grp., Inc.*, 568 N.E.2d 1002, 1003 (Ill. App. 1991) (plaintiff argued that loss of consortium claim was not barred by WCA exclusivity provision); *Mufich v. Heisler Green Chem. Co.*, 460 N.E.2d 482, 482–83 (Ill. App. 1984) (plaintiff filed claim

under WCA for workplace injury against employer-hospital and also filed negligence claim against same employer-hospital for failure to provide adequate medical care for workplace injury).

These theories can include constitutional challenges to the laws. See, *e.g.*, *Chmelik v. Vana*, 201 N.E.2d 434 (Ill. 1964) (rejecting due process and equal protection challenges to exclusivity provision in WCA); *Goldblatt Bros. v. Indus. Comm'n*, 427 N.E.2d 118, 120 (Ill. 1981) (dismissing Fourteenth Amendment challenge to WCA for lack of standing); *First Nat'l Bank of Ottawa v. Wedron Silica Co.*, 184 N.E. 897, 900 (Ill. 1933) (rejecting claim that ODA amounted to taking of property without due process of law); *Deibeikis v. Link-Belt Co.*, 104 N.E. 211 (Ill. 1914) (rejecting multiple constitutional challenges to framework of WCA). Injured and sick employees have been asserting common law negligence claims against their employers in spite of the ODA and WCA for at least a century, since the widespread adoption of workers' compensation statutes.

Employers buy liability coverage for claims by employees to limit their risks and to buy peace of mind. The latest creative legal theory for avoiding workers' compensation statutes may seem doomed to certain defeat, but the employer-defendant must still defend itself and must confront a small but non-zero risk that a new theory or exception might work in the particular case. An insured employer sued by an employee on a novel theory would reasonably expect to be covered by the policy language here. Covered losses include the expenses of defending "groundless" claims under "Employers' Liability Laws," which certainly implies that coverage is available even when a statute seems to provide a clear defense for a claim against an

employer under a statute or the common law. Yet Safety National's narrow reading of the undefined term "Employers' Liability Laws" would leave employers exposed to those risks.

In light of this potential for gaps in the statutory coverage and the need for defense of even groundless claims, the district court's broad interpretation of "Workers' Compensation or Employers' Liability Laws" is persuasive. It is also consistent with our treatment of a similar policy under Indiana law. We explained that a "workers compensation and employer liability policy is a standard liability insurance policy designed to insure an employer primarily for liability under workers' compensation laws, but secondarily for liability for workplace accidents not covered by such laws … ." *Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 778–79 (7th Cir. 2010). We explained that these policies fill "gaps in workers' compensation law that sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief." *Id.* at 779.

In *Hayes Lemmerz*, an insurance policy required reimbursement for defense costs where the underlying claim fell under Indiana workers' compensation and employers' liability laws. The injured employees tried in their underlying suit to avoid the exclusive workers' compensation remedy. Because of mistakes by the employer defendants, the lawsuit went on longer than it should have. Although the insurer ultimately prevailed because the insured employer was not seeking *reasonable* defense costs, we still made clear that the policy did in fact cover the reasonable costs of defending even doomed common law claims by injured employees. *Id.* at 782. That is

the same issue we face here, and the reasoning of *Hayes Lemmerz* points toward coverage.

Third, regardless of the architecture of the Illinois statutes, the Safety National policy was written to apply nationwide and therefore should be understood as flexible enough to adapt to any combination of statutes and common law affecting employers' liability to their employees for injuries and illnesses. Safety National itself acknowledges that the term "Employers' Liability Laws" has a broader, more general meaning in states like New Jersey and California, which allow for both statutory and common law employer liability. See, *e.g.*, *Schmidt v. Smith*, 713 A.2d 1014, 1017 (N.J. 1998) (employers' liability insurance is intended to serve as a "gap-filler" to protect employer where employee brings tort action); *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 884 P.2d 1048, 1056–57 (Cal. 1994) (in bank) (employers' liability portion of insurance policy extended to common law claims, but workers' compensation portion did not).

According to Safety National, however, in Illinois there is no room for any common law claim, so the term "Employers' Liability Laws" is just an empty set. We are not persuaded. We believe the phrase is broad enough to include common law claims in Illinois as well, even if they are "groundless." Even in Illinois, an insured employer cannot predict whether or when an injured or sick employee may try to assert, or a state court might entertain for the duration of an expensive lawsuit, a claim outside the scope of the statute.

For these reasons, we agree with the district court and TKK that the better reading of the Safety National policy is that the

term "Workers' Compensation or Employers' Liability Laws" includes any claim or lawsuit in which an employee or his dependent seeks to impose liability on the insured employer for a workplace injury or disease. The claim could be based on statutory law, like the ODA, or on the common law, as was the case in the Perkins lawsuit, even if there seemed to be no viable way for Mrs. Perkins to avoid the ODA provision barring a common law claim against TKK.

Even if the district court's interpretation of the policy term were not the more persuasive one, it is certainly a reasonable interpretation. And that is an alternative reason for affirming the district court's decision. "If language in the insurance policy is subject to more than one reasonable interpretation, an ambiguity exists which must be resolved in favor of coverage." *FDIC v. American Cas. Co. of Reading*, 998 F.2d 404, 408 (7th Cir. 1993) (applying Illinois law); *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005) (explaining that when "policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer"). We construe such an ambiguity against the insurer because the insurer enjoyed the benefit of drafting the policy. See *McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998); *Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 478 (7th Cir. 1994), citing *National Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 361 (7th Cir. 1987) (under Illinois law when term in insurance contract is ambiguous, "the insured's interpretation of [the] unclear provision must prevail in order to effectuate the predominate purpose of the contract which is to indemnify the insured") (internal citations and quotations omitted). Finally, we apply these interpretive

principles "most rigorously" when the ambiguous term purports to limit liability or exclude insurance coverage. *Playboy Enters., Inc. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 428 (7th Cir. 1985) (interpreting Illinois law).

Two collateral issues arose during oral argument. We note briefly why we need not and should not decide them. The first is simply the reasonableness of the amount of money that TKK spent in defending the Perkins lawsuit. It is not readily apparent how TKK could have accumulated several hundred thousand dollars in legal fees on a covered claim that should have been subject to a simple motion to dismiss based on the ODA's exclusive remedies. We do not decide the question because the record shows that Safety National raised this issue in the district court but then abandoned it.

After losing on summary judgment, Safety National asked for an evidentiary hearing regarding the reasonableness of TKK's defense costs. The court ordered TKK to submit a statement of those costs, gave Safety National an opportunity to challenge their reasonableness, and was prepared to hold a hearing if needed. App. 11–12; see also R. 29 at 9–10. TKK submitted its costs, but Safety National never moved to challenge their reasonableness. See also App. 14 (explaining that Safety National told the court "it would not challenge the reasonableness of the number of hours expended or hourly rates reflected in [TKK's] Costs Submission"). It cannot do so for the first time on appeal. See, *e.g.*, *Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (collecting cases); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (arguments not presented to district court in response to summary judgment are waived).

Second, the Safety National policy excludes from coverage any loss to the employer based on a "Rejection by the EM-PLOYER of any Workers' Compensation Law." Safety National suggested in oral argument that a decision by TKK in the Perkins lawsuit not to file a prompt motion to dismiss based on the exclusivity provision in the ODA could be understood as a "rejection" of the Workers' Compensation Laws. On that theory, the exclusion for a "rejection" would bar coverage.[3] In response to questions in oral argument, we heard conflicting information about whether such a motion was filed. It is clear, however, that Safety National never raised this potential defense theory in the district court, where the relevant facts could have been determined. Appellate briefs and oral argument are not the forum to begin exploring a possible defense. *E.g.*, *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599–600 (7th Cir. 2005).[4]

---

[3] The "rejection clause" is limited to Workers' Compensation Laws and says nothing about "Employers' Liability Laws." Safety National would have a second difficulty in raising this argument because it would have to establish that the ODA was included in "Workers' Compensation Laws" and not "Employers' Liability Laws," for which there seems to be no rejection clause.

[4] At pages 6–7 of its reply brief in this court, Safety National argues that it did not waive the "rejection" exclusion defense. The cited portions of the record show that Safety National has argued all along that the Perkins lawsuit was not covered because of the ODA's exclusivity provision. Safety National has not shown, though, that it ever raised before the district court the very distinct issue of the "rejection" exclusion. Our independent review of the record found no mention of the rejection exclusion in Safety National's answer, the summary judgment briefing, or the motion to reconsider.

Accordingly, we affirm the district court's decision on the merits that the Safety National policy covered excess losses that TKK incurred in defending and settling the Perkins lawsuit.

B. *Section 155 Claims for Attorney Fees*

Section 155 of the Illinois Insurance Code allows an insured to recover attorney fees when the insurer's denial of coverage or delay in payment is "vexatious and unreasonable," or when the insurer behaves vexatiously and unreasonably during the course of coverage litigation. 215 Ill. Comp. Stat. 5/155; *Peerless Enter., Inc. v. Kruse*, 738 N.E.2d 988, 1002 (Ill. App. 2000). An insurer's actions are not vexatious and unreasonable if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (internal citations omitted).

Arguments against coverage that lack support in fact or law belie any possible good faith dispute and thus fall under section 155. *Bedoya v. Illinois Founders Ins. Co.*, 688 N.E.2d 757, 764–65 (Ill. App. 1997). In determining if conduct rises to the level of section 155 sanctions, we consider the totality of the circumstances. *Statewide Ins. Co. v. Houston Gen. Ins. Co.*, 920 N.E.2d 611, 624 (Ill. App. 2009). Because, under Illinois law, the standard of review of section 155 sanctions changes depending on the point at which they were awarded, we

address the standards of review separately below for each
sanction decision.[5]

### 1. *Denial of Attorney Fees Under Section 155*

As part of its first motion for summary judgment, TKK
requested section 155 attorney fees. The district court granted
the motion on the merits but denied the request for section 155
fees. In its opposition to Safety National's motion to reconsider,
TKK again requested these fees, which the district court again
denied, except for the fees for defending the motion to recon-
sider, which we address below. Illinois state courts, and thus
we here, review *de novo* the denial of a request for section 155
damages granted on the pleadings or on summary judgment.
See *Employers Ins. of Wausau v. Ehlco Liquidating Trust*,
708 N.E.2d 1122, 1139 (Ill. 1999); *West Am. Ins. Co. v. J.R. Constr.
Co.*, 777 N.E. 2d 610, 621 (Ill. App. 2002); *Korte Constr. Co. v.
Am. States Ins.*, 750 N.E.2d 764, 771 (Ill. App. 2001). Given this
standard, we will consider "only whether any genuine issue of
material fact exists and whether the movant is entitled to a
judgment as a matter of law." *Korte Const. Co.*, 750 N.E.2d at
771.

---

[5] It is not entirely clear that the standards of review for section 155
sanctions under Illinois law should be considered substantive law that we
must apply or procedural law governed by federal law. See *Hanna v.
Plumer*, 380 U.S. 460, 467–68 (1965); *Erie R. Co. v. Tompkins*, 304 U.S. 64
(1938); see also 19 Charles Alan Wright *et al.*, Federal Practice and Procedure
§ 4511 (2d ed.). "The line between 'substance' and 'procedure' shifts as the
legal context changes." *Hanna*, 380 U.S. at 471. Both parties, however, seem
to agree that the Illinois standards of review function here as substantive
law. We need not push the issue any further.

The district court denied TKK's request for attorney fees in the litigation up to Safety National's decision to file its motion to reconsider because it determined that a good faith dispute existed. The undisputed facts show that a good faith dispute existed as to the policy's coverage for common law negligence claims, so we affirm the district court's denial of section 155 attorney fees for the district court litigation through the decision on the merits.

Safety National took a reasonable legal position on an unsettled issue of law. The fact that neither party nor the district court could cite an Illinois case directly on point holding that the exclusivity provision in the ODA did or did not properly bar coverage for a common law claim against an employer for occupational disease shows that there was a genuine legal issue. This case also raised a question of first impression in our court, and it cannot be characterized as vexatious or unreasonable. *Lazzara v. Howard A. Esser, Inc.*, 622 F. Supp. 382, 386 (N.D. Ill. 1985) ("[W]hen there is a legitimate issue to be determined, a finding of unreasonable or vexatious delay cannot be made.").

Safety National is also not guilty of "mending the hold" as our circuit has explained the doctrine. See *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362–65 (7th Cir. 1990) (explaining that Illinois common law doctrine of "mend the hold" prevents a party to a contract, especially an insurer, from changing justifications for its position when its first defense fails; change in position can be evidence of bad faith). Safety National's position has been consistent from its initial denial of coverage and throughout the litigation. It is not susceptible to

section 155 sanctions for raising a new defense in the district or appellate court to avoid coverage.

In its first letter denying coverage, Safety National explained to TKK that it owed no duty to defend or indemnify against the Perkins lawsuit because the negligence claims in the Perkins lawsuit were "barred by the exclusivity provision in the ODA, and, therefore, [TKK] will never be subject to any 'Loss' resulting from those claims for which Safety National would be required to provide indemnity." While this argument was clarified in this lawsuit to explain that, based on the exclusivity provision of the ODA, "Workers' Compensation Laws or Employers' Liability Laws" exclusively means the WCA and ODA, the basic premise is the same: the exclusivity provision in the ODA closes off all other avenues for relief to an employee so that the policy covers only claims based on the ODA. Safety National has made this point, albeit in different forms, to TKK in its denial of coverage letters, to the district court, and again to this court.

We recognize that it was Safety National's own drafting that made the contract ambiguous and created the legal question here. We also recognize that the policy goals of section 155—to protect the insured from having his "whole claim wiped out by expenses if the [insurance] company compels him to resort to court action, although the refusal to pay the claim is based upon the flimsiest sort of a pretext," and to ensure that lawsuits like this one are economically feasible for the insured and deter the insurer—may be relevant here. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 901 (Ill. 1996), quoting Harold C. Havighurst, *Some Aspects of the Illinois Insurance Code*, 32 Ill. L. Rev. 391, 405 (1937). At the same time,

insurers are entitled to defend reasonable positions in litigation without this additional cost under section 155.

2. *Award of Attorney Fees for the Motion to Reconsider*

The district court did grant, however, TKK's request for section 155 sanctions for the modest cost of defending Safety National's motion to reconsider. The parties agree that the correct standard of review for the grant of section 155 sanctions for a motion to reconsider is abuse of discretion. Yet *Ehlco* seems to suggest that the appropriate standard of review for the grant of section 155 sanctions in the denial of a motion to reconsider would depend upon the appropriate standard of review for the motion to reconsider itself. *Ehlco*, 708 N.E.2d at 1139 (explaining that *de novo* review applies to grant of section 155 sanctions in motion for judgment on the pleadings because Illinois courts review judgments on the pleadings *de novo*); *Korte Constr. Co.*, 750 N.E.2d at 771 (citing *Ehlco* to explain that grant of section 155 sanctions on motion for summary judgment is reviewed *de novo* because grants of summary judgment are reviewed *de novo*). Under Illinois law, the standard of review for motions to reconsider depends on the content of the motion itself, which in this case would be *de novo* because the motion to reconsider did not raise any new issues of law or facts. *Muhammad v. Muhammad-Rahmah*, 844 N.E.2d 49, 56 (Ill. App. 2006) (explaining that motions to reconsider that do not raise any new law or facts are reviewed *de novo*). We need not come to closure on this issue of Illinois law, though. Under either standard, *de novo* review or abuse of discretion, the district court's decision was correct.

The district court awarded section 155 attorney fees for the motion to reconsider because it found that the motion did not present any new law or new facts "but simply rehashed [defendant's] previous argument that 'Employers' Liability Laws' meant the ODA and WCA exclusively." *TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 2011 WL 7138875, at *1 (N.D. Ill. Dec. 2, 2011). The district judge described the motion to reconsider as doing nothing more than "challeng[ing] my interpretation of the policy terms … ." *Id*. On appeal, Safety National argues that it filed the motion after exercising professional judgment. We appreciate that. But the fees were not assessed here because an attorney acted unethically. They were assessed because the decision to file the motion was unreasonable. Based on the lack of new argument, law, or fact, the district court reasonably viewed the motion as simply "rehashing" old arguments. We affirm the district court's award of attorney fees.

3.  *Request for Attorney Fees for this Appeal*

In its request for attorney fees for this appeal pursuant to Federal Rule of Appellate Procedure 38, TKK repeats its arguments about why there was never a good faith dispute in the first place. We reject this argument for reasons already stated. This appeal was not frivolous.

In sum, the better reading of the insurance policy here results in coverage for the costs of defending and settling the Perkins lawsuit, as the district court found. And thus Safety National must reimburse TKK for its claim expenses, including costs of defense and settlement, above the floor of the excess

liability policy, and for its expenses in responding to the motion to reconsider.

The decisions of the district court are AFFIRMED.