COLORADO COURT OF APPEALS                                   **2017COA29**

Court of Appeals No. 15CA2039
Jefferson County District Court No. 14CV32279
Honorable Christopher J. Munch, Judge

City of Lakewood, Colorado,

Plaintiff-Appellant and Cross-Appellee,

v.

Safety National Casualty Corporation,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE HARRIS
Lichtenstein and Richman, JJ., concur

Announced March 9, 2017

Sherman & Howard, L.L.C., Christopher R. Mosley, Jennifer Kirk Morris,
Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

Treece Alfrey Musat P.C., Paul E. Collins, Carol L. Thomson, Denver, Colorado,
for Defendant-Appellee and Cross-Appellant

¶ 1     The City of Lakewood (City) has an insurance policy that covers losses arising from the workers' compensation or employers' liability laws of any state on account of bodily injury to an employee.

¶ 2     After a City police officer was killed by friendly fire, his widow filed a lawsuit under 42 U.S.C. § 1983 (2012), alleging that the City and various fellow officers had violated the deceased officer's rights under the Federal Constitution.  The City sought indemnification for its own defense costs and those of the officers named in the lawsuit, which the City has an independent statutory duty to cover.  The insurance company, Safety National Casualty Corporation, denied coverage.

¶ 3     The district court concluded that a § 1983 claim does not arise under an employer liability law of any state and granted summary judgment for the insurance company.  We agree.  And while the district court did not reach the separate question of whether the officers' defense costs are covered by the policy, we conclude that they are not.  Accordingly, we affirm the summary judgment in favor of the insurance company.

## I.    Background

¶ 4    The insurance company issued a "Specific Excess Workers' Compensation and Employers' Liability Insurance Agreement" to the City.  The policy indemnified the City, as an employer, for "Loss sustained by the EMPLOYER because of liability imposed upon the EMPLOYER by the Workers' Compensation or Employers' Liability Laws of" Colorado or other states, "on account of bodily injury by accident" to "Employees of the EMPLOYER" engaged in job-related activities.

¶ 5    "Loss" included two categories of reimbursable costs.  First, the City could recoup from the insurance company any "actual payments, less recoveries, legally made by the EMPLOYER to Employees and their dependents in satisfaction of: (a) statutory benefits, (b) settlements of suits and claims, and (c) awards and judgments."  Second, the City could recoup its "Claim Expenses," which is defined as the City's own litigation expenses.

¶ 6    During the term of the policy, one of the City's police officers was accidentally shot and killed by a fellow officer while both were on duty.  The slain officer's widow later filed a lawsuit under 42 U.S.C. § 1983, alleging that the fellow officer, two of his supervising

officers, and the City had violated her husband's federal constitutional rights by subjecting him to the unreasonable use of deadly force.

¶ 7     The City sought indemnification under the policy for the costs of its own defense and the defense of the individual officers. When the insurance company denied the claim, the City filed a declaratory judgment action.

¶ 8     On cross-motions for summary judgment, the district court reasoned that § 1983 did not qualify as an "employers' liability law" of the State of Colorado or any other state, and therefore it concluded that the policy did not cover the City's losses incurred in connection with its defense of the lawsuit. The court did not address the City's separate claim that it suffered additional losses because of liability imposed by sections 24-10-110 and 29-5-111, C.R.S. 2016, which require the City to cover defense costs for its peace officers.

## II.     Discussion

¶ 9     On appeal, the City contends that the district court erred in granting summary judgment to the insurance company because the

policy unambiguously covers all defense costs incurred by the City in connection with the § 1983 lawsuit.

### A. Standard of Review and Principles of Interpretation

¶ 10 We review a trial court's decision granting summary judgment de novo. *Oasis Legal Fin. Grp., LLC v. Coffman*, 2015 CO 63, ¶ 30. Summary judgment is appropriate only if the pleadings and supporting documents demonstrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Laughman v. Girtakovskis*, 2015 COA 143, ¶ 8. The interpretation of an insurance policy presents a question of law and, therefore, is appropriate for summary judgment. *Mt. Hawley Ins. Co. v. Casson Duncan Constr., Inc.*, 2016 COA 164, ¶ 3.

¶ 11 An insurance policy is "merely a contract that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Accordingly, words should be given their plain and ordinary meaning, unless contrary intent is evidenced in the policy. *Id.*; *see also Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). Provisions of the policy should

be read as a whole, rather than in isolation. *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992).

## B. Reimbursement of the City's Own Costs of Defense

¶ 12 There is no dispute that the City has suffered a loss as defined by the policy. A "Loss" for purposes of coverage includes the City's "Claim Expenses," defined as its own costs of defense. The question is whether the loss is a result of liability imposed on the City by "Employers' Liability Laws" of Colorado or "other State(s)."

¶ 13 The term "Employers' Liability Laws" is not defined in the policy. But courts and commentators generally agree that an employer liability policy is designed to cover an employer's liability to employees for work-related injuries that do not fall within the exclusive remedy provisions of workers' compensation statutes. *See, e.g., TKK USA, Inc. v. Safety Nat'l Cas. Corp.*, 727 F.3d 782, 791 (7th Cir. 2013) (Employer liability insurance policies "fill 'gaps in workers' compensation law that sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief.'" (quoting *Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 779 (7th Cir. 2010))); *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2015) (stating that employers'

liability insurance provides coverage for claims that do not come within workers' compensation statutes); 7B John Appleman, *Insurance Law and Practice* § 4571, at 2 (Walter F. Berdal ed., 1979) ("[W]orkers' compensation is routinely written in combination with an employer's liability policy to provide protection for those situations where [workers'] compensation may not apply and thus avoid a gap in protection because employee claims subject to workers' compensation law are generally excluded in other types of liability policies.").

¶ 14     The City argues that the § 1983 municipal liability claim must be covered by the employers' liability portion of the policy because it is a claim based on work-related injuries that falls outside the ambit of the workers' compensation laws.  But this overstates the scope of the coverage under the policy.

¶ 15     An "employers' liability law" cannot mean *any* statutory or common law claim that might subject the employer to liability because of an employee's bodily injury.  If the insurance company had intended to provide such broad coverage, it would not have restricted coverage to claims arising under workers' compensation or employers' liability laws; it would simply have agreed to

reimburse the City for any losses it became obligated to pay on account of bodily injury by accident to an employee. The City's construction reads any limitation out of the contract, a result we cannot endorse. In construing a contract, we must give effect to all of its words and provisions so that none are rendered meaningless. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009).

¶ 16    But if not all claims for employees' injuries fall within the term "employers' liability laws," which claims does the policy cover? Applying the pertinent law, we conclude that employers' liability laws are workers' compensation-type claims: they include employee injury statutes that have displaced common law claims — occupational disease laws, for example — as well as employer liability-type common law tort claims that might fall outside the relevant statutes. *See TKK*, 727 F.3d at 788 (rejecting insurer's argument that "Employers' Liability Laws" included only statutes that displace the common law, and reading the term to include common law claims); *Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 553 S.E.2d 257, 262 (W. Va. 2001) (finding employers' liability policy covers an "action for common law damages" that is

7

not barred by workers' compensation laws). By the policy's plain terms, though, the common law claims must arise under the laws of Colorado or "other State(s)."

¶ 17 Thus, the City's claim for reimbursement of its costs incurred in defending the § 1983 lawsuit is covered only if § 1983 qualifies as a state "employers' liability law," meaning it is either a state statute that displaces an employee's common law claims for workplace injuries, or it constitutes a state common law claim related to, but falling outside, a workers' compensation scheme. We conclude that it is neither.

¶ 18 Section 1983 is not a workers' injury statute that displaces common law claims with a new cause of action. Indeed, the statute is not itself the source of *any* substantive rights, *Espinoza v. O'Dell*, 633 P.2d 455, 460 (Colo. 1981); rather, it serves as a statutory vehicle to provide remedies for the deprivation of rights granted by the Federal Constitution or by other federal laws. *Mosher v. City of Lakewood*, 807 P.2d 1235, 1238 (Colo. App. 1991).

¶ 19 Nor could § 1983 be construed as a "common law" claim. The statute allows a plaintiff to vindicate rights conferred under the Federal Constitution and federal statutes, not under the common

8

law.  Assertion of a common law claim "is not only not required, it is not sufficient to state a claim under § 1983." *Meier v. McCoy*, 119 P.3d 519, 526 (Colo. App. 2004).

¶ 20    In any event, as the City acknowledges, § 1983 is not a law of Colorado or any other state.  Still, it insists that fact is not an obstacle to coverage because federal laws are included in the policy's definition of "state" laws.  We disagree.

¶ 21    Under the policy, "State" means "any state, territory, or possession of the United States of America and the District of Columbia."  The City says that because the United States territories and the District of Columbia fall under the exclusive jurisdiction of the federal government, *see* U.S. Const. art. I, § 8, cl. 17 (Congress has exclusive jurisdiction over District of Columbia); U.S. Const. art. IV, § 3, cl. 2 (Congress has exclusive jurisdiction over United States territories), these entities are governed exclusively by federal law and, therefore, their inclusion in the definition of "State" demonstrates that "state" law encompasses federal law.  The argument stumbles at the second step.

¶ 22    True, Congress has jurisdiction over the District of Columbia and all United States territories, but the United States Code is not

the exclusive law that applies. Puerto Rico, for example, has its own constitution and its own civil and criminal code. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 671 (1974). Included within its code is a workers' compensation statute. *See* P.R. Laws Ann. tit. 11, §§ 1-42 (2016) (Compensation System for Work-Related Accidents Act); *see also* D.C. Code §§ 32-1501 to -1545 (2016) (workers' compensation). Thus, we interpret the inclusion of the District of Columbia and United States territories within the definition of "States" as an acknowledgment that, for purposes of workers' compensation and employers' liability laws, those entities function essentially as independent states.

¶ 23    Moreover, had the insurance company intended to cover claims arising under federal law, it is unlikely that it would have expressed that intent by reference to the District of Columbia or United States territories. More likely, the policy would simply say that coverage is provided for loss sustained by an employer because of liability imposed by workers' compensation or employers' liability laws of Colorado, any other state, or the United States. *See Flores-Rosales v. United States,* Nos. EP-08-CV-98-KC & EP-06-CR-1717-KC, 2009 WL 1783703, at *2 (W.D. Tex. June 3, 2009) ("The term

'laws of the United States' unambiguously means federal laws . . . ."); *see also Grand Lodge A. O. U. W. of Okla. v. Hopkins*, 52 P.2d 4, 12 (Okla. 1935) ("If appellant intended to reduce the term of extended insurance on account of loans to the insured, it would have been an easy matter to have so provided in the policy; and the inference from its failure to do so is that it did not so intend.").[1]

We therefore conclude that the City's defense costs, which were sustained because of liability imposed as a result of the widow's § 1983 claim, did not arise from a state workers' compensation or employers' liability law and were not covered by the policy.

---

[1] The City's argument that it had a reasonable expectation of coverage is based on the same argument that the policy purported to cover federal claims. For the reasons explained above, we disagree that an ordinary insured would have construed the term "Laws of [Colorado], or other State(s)" to mean federal law. Accordingly, the doctrine of reasonable expectations does not apply to extend coverage under the policy to the City's litigation costs. *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1054 (Colo. 2011) (stating that under doctrine of reasonable expectations, even if policy language is not technically ambiguous, it may be construed in favor of coverage where the insured would reasonably believe that claim is covered, but doctrine does not expand coverage on a "general equitable basis" (quoting *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995))).

C.    Reimbursement of the Officers' Defense Costs

¶ 24    Next, the City contends it is entitled to reimbursement for amounts it paid to cover the fellow officers' defense costs.  The district court did not address this claim, but we may decide the issue without a remand because the scope of coverage presents a question of law subject to de novo review in any case.  *See Bd. of Cty. Comm'rs v. Colo. Oil & Gas Conservation Comm'n*, 81 P.3d 1119, 1124 (Colo. App. 2003).

¶ 25    Again, coverage turns on whether the City has suffered a defined loss that resulted from liability arising under a state employers' liability law.

¶ 26    Under the Colorado Governmental Immunity Act, section 24-10-110, a municipality is liable for the costs of defense of any of its employees where the claim against the employee arises out of injuries sustained from an act of that employee conducted during the course and scope of his employment.  In addition, section 29-5-111 requires a municipality to provide a defense for its peace officers to any civil action alleging a tort committed within the scope of their employment.

¶ 27 Even if sections 24-10-110 and 29-5-111 qualify as employers' liability laws — an issue we do not decide — the City must have suffered a "loss" under the policy because of liability imposed by those statutes. The City says the indemnification payments to the fellow officers named in the widow's § 1983 lawsuit qualify as a "loss" because those amounts constitute "actual payments . . . to Employees . . . in satisfaction of . . . statutory benefits." We are not persuaded.

¶ 28 As an initial matter, if the policy was intended to cover third-party indemnification claims, it would likely have included express language to that effect. *See, e.g., Clackamas Cty. v. Midwest Emp'rs Cas. Co.*, No. 07-CV-780-PK, 2009 WL 4916364, at *2 (D. Or. Dec. 14, 2009) (holding policy provided coverage to employer for defense costs paid to employees in connection with § 1983 lawsuit where policy expressly covered "[d]amages for which [the county is] liable to a third party by reason of a claim or suit against [the county] by that third party to recover the damages claimed against such third party as a result of injury to [the county's] employee"); *see also Cyprus*, 74 P.3d at 299 (in construing

an insurance policy, courts may not add provisions to extend coverage beyond those contracted for).

¶ 29    In the absence of an actual third-party indemnification provision, the City attempts to shoehorn its indemnification payments into the definition of "loss," but the resulting construction is counterintuitive and at odds with the plain language and obvious intent of the loss provision.  Under the policy, "Loss" is defined as follows:

> (1) "Loss" – shall mean actual payments, less recoveries, legally made by the EMPLOYER to Employees and their dependents in satisfaction of: (a) statutory benefits, (b) settlements of suits and claims, and (c) awards and judgments.  Loss shall also include Claim Expenses, paid by the Employer, as defined in Paragraph (2) of this Section.  The term Loss shall not include the items specifically excluded by Paragraph (3) of this Section.

> (2) "Claim Expenses" – shall mean court costs . . . and the reasonable allocated costs of investigation, adjustment, defense, and appeal . . . of claims, suits or proceedings brought against the EMPLOYER under the Workers' Compensation or Employers' Liability Laws of [Colorado] or other State(s) . . . .

Under the City's reading of paragraph (1), "Loss" includes any payments made by the employer to *any* of its employees in

connection with an employers' liability law, so long as the payment relates to some employee's accidental injury.  We reject that broad construction.

¶ 30    The policy provides the following definition of "Employee":

> [A]s respects liability imposed upon the EMPLOYER by the Workers' Compensation Law of any State, the word Employee shall mean any person performing work which renders the EMPLOYER liable under the Workers' Compensation Law of [Colorado], which is the State of the injuries or occupational disease sustained by such person.

¶ 31    Under a narrow reading, this definition indicates that an "Employee" includes only persons performing work for which the employer is liable under the workers' compensation law of Colorado, and not other employers' liability laws, as those laws are not referenced in the definition.  Thus, the City's liability to the fellow officers, which does not arise under workers' compensation laws of Colorado, is not covered.

¶ 32    But even under a broader reading, the definition makes clear that the term "Employee" refers to the *injured* employee, not to an employee potentially responsible for the injury.  The policy defines "Employee" with respect to claims arising under workers'

15

compensation laws, and does not mention employers' liability laws. If we apply the same definition of "Employee" to liability imposed under closely related employers' liability laws, *cf. Sullivan v. Indus. Claim Appeals Office*, 22 P.3d 535, 538 (Colo. App. 2000) ("[D]efinitions of words used elsewhere in the same statute furnish authoritative evidence of legislative intent."), the fellow officers still do not qualify as "Employees." An "Employee" is the "person" who has "sustained" the "injuries or occupational disease."

¶ 33    Moreover, only this definition of "Employee" gives effect to the phrase "less recoveries." The policy limits reimbursable loss to "actual payments, less recoveries," made by the employer to the employee in satisfaction of statutory benefits. We read the "recovery" contemplated by this provision as a reference to the requirement that a workers' compensation claimant who recovers from a third-party tortfeasor must reimburse the employer or its insurer for any benefits paid. *See Jorgensen v. Colo. Comp. Ins. Auth.*, 967 P.2d 172, 173 (Colo. App. 1998), *aff'd*, 992 P.2d 1156 (Colo. 2000). If loss includes payments to non-injured employees, we are left to wonder about the meaning of the term "recoveries."

¶ 34 Finally, an interpretation that calls for the insurance company to reimburse the City for payments made to any of its employees under various indemnification statutes would transform a workers' compensation-employers' liability policy into a third-party indemnification policy. We must avoid a construction that contradicts the clear intent of the policy to cover only workers' injury claims. *See Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 792 (Colo. App. 2001) ("A contract must always be interpreted in light of the intentions of the contracting parties."), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo. 2007).

¶ 35 Thus, we conclude that "loss" means payments made by the City to the injured employee and his or her dependents. Under this definition, the City's indemnification payments to the officers named in the lawsuit do not qualify as "losses" under the policy, and the City is not entitled to reimbursement from the insurance company.

### III. Conclusion

¶ 36    The judgment is affirmed.[2]

JUDGE LICHTENSTEIN and JUDGE RICHMAN concur.

---

[2] In light of our disposition, we need not address the insurance company's claim asserted on cross-appeal.